MARGARET M. COWELL, ADMINISTRATRIX AD PROSE-
QUENDUM OF WILLIAM COWELL, DECEASED, RE-
SPONDENT, v. THE PENNSYLVANIA RAILROAD COM-
PANY, APPELLANT.

Submitted March 25, 1925—Decided May 18, 1925.

1. Where the driver of an automobile truck was in a railroad yard
   where he had business, and, in attempting to get out, drove his
   truck down a roadway paralleling a single track and crossing it,
   upon which track was an engine pointing away from the cross-
   ing but proceeding backwards so slowly that it was inferable
   that it might look to a man in a traveling automobile truck as
   though the engine were standing still, or nearly so, it was for
   the jury to say whether the truck driver was careless in not
   coming to a stop and looking around to see whether the engine
   was not backing down upon him.
2. The doctrine that the negative testimony of a witness who says
   that he did not hear a whistle blown or bell rung is not in
   conflict with affirmative testimony of credible witnesses who
   state that the whistle was blown and the bell rung, does not
   apply where the witness who gives the negative testimony was in
   a position to hear, and heard nothing—in such a posture the
   question is for the jury.
3. Where there was evidence that in a railroad yard there was a
   practice or custom of giving a signal, by bell or whistle, of
   moving locomotives, and decedent had been in the yard on many

occasions during a period of eight months, a jury might properly find that he had knowledge of such custom and practice, and would therefore be justified in relying upon the giving of such warning.

On appeal from the Supreme Court, whose *per curiam* is printed in 2 *N. J. Mis. R.* 966.

For the appellant, *Wall, Haight, Carey & Hartpence.*

For the respondent, *Alexander Simpson.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff's intestate, William Cowell, was killed on the morning of February 6th, 1923, while driving a motor truck over a crossing of the defendant in a railroad yard at Jersey City. He had previously delivered a load of building material at a point in another part of the yard and then drove farther down to go over the crossing and out. After turning his truck at the crossing he was struck by a locomotive of the defendant. The truck, on being struck, was pushed forward by the engine and turned over on the driver, killing him.

The locomotive and the truck were seen moving slowly in the same direction, side by side, with but a few feet between them, at a point about sixty feet from the crossing, and, apparently, nothing interfered with the view of either by the persons on them. The track upon which the locomotive was moving curved slightly toward the driveway along which the motor truck was being driven, and the track and driveway crossed at an angle at the point of the accident, but vehicles passing over it would turn and cross at right angles to the rails instead of at an obtuse angle, and the planking was so arranged. The crossing was protected by signs.

The engine driver testified that at the time he started the locomotive on its backward movement toward the crossing he blew the engine whistle and rang the bell, and that he continued to ring the bell until the first part of the tender had just about reached the crossing. The engine was moving

very slowly. The witness Glassman testified that he heard the whistle and bell as the engine started off. The witness Burke testified that he was a short distance away from the crossing, about opposite it, engaged in other work, but that he heard the crash of the collision and looked up in time to see the building alongside of the crossing collapse, and that he heard a whistle and bell just before the crash, which, in his judgment, came from the locomotive that collided with the truck. The other testimony regarding the bell and whistle was that given by the witness Fetzer, who stated that he was about eight feet from the crossing and the engine about sixty feet from it, and that he did not hear any whistle or bell from that locomotive or any other. There was evidence of a custom in the yard to blow the whistle and ring the bell as a locomotive was about to pass over this crossing.

Motions to nonsuit and to direct a verdict in favor of the defendant were denied, and the jury rendered a verdict in favor of the plaintiff, and judgment was entered thereon accordingly. An appeal was taken to the Supreme Court where the judgment was affirmed. The present appeal is from the judgment of the Supreme Court.

The argument for defendant-appellant was made under four points:

1. The negligence of defendant was not established, and the negligence of plaintiff's intestate was the proximate cause of his death.

The briefs of both parties state, what is the fact, that the engine was moving backwards very slowly, and it cannot be said, as a matter of law, that the decedent was negligent in attempting to run his truck down by it and over the crossing, especially so in view of the fact that there was evidence from which it could be inferred that no warning was given by bell or whistle. Thus, the issue of negligence on the part of the defendant, as well as contributory negligence on the part of the decedent, presented jury questions. *Baer* v. *Lehigh and Hudson River Railway Co., 93 N. J. L.* 85.

2. Failure to give the statutory or customary warning does not absolve a person from the exercise of that due care and

caution which is required of one going into a place of danger.

It must be conceded that the absence of warning does not absolve a person from exercising due care. But it should be stated that the *locus in quo* not being a public highway crossing no warning was required by statute. And in the case at bar the question did not depend wholly upon the exercise of due care by the decedent. He had gone into the yard with a truck load of materials for repairs that were going on. After their delivery he attempted to go out by the usual route, a roadway paralleling a single track and crossing it. The engine which ran him down was pointing away from the crossing, but proceeding backwards so slowly that it was inferable that it might look to a man in a traveling automobile truck as though the engine were standing still, or nearly so. In these circumstances it was for the jury to say whether he was careless in not coming to a stop and looking around to see whether the engine was not backing down upon him.

3. The negative testimony of a witness who simply testified that he did not hear a whistle blown or bell rung is not in conflict with the affirmative testimony of credible witnesses whose testimony that the whistle was blown and the bell rung stands unchallenged.

The cases of *Eissing* v. *Erie Railroad Co.*, 73 *N. J. L.* 343, and *Holmes* v. *Pennsylvania Railroad Co.*, 74 *Id.* 469, cited in the brief for defendant-appellant, do not apply where the facts (as in this case) are not parallel, and where one in a position to hear, hears nothing. In such posture the question is for the jury. *Tischman* v. *Erie Railroad Co.*, 81 *Id.* 268, 270; *affirmed*, 83 *Id.* 793.

4. A particular usage or custom will not be binding unless shown to have been known by the party to be affected by it.

There was evidence of a practice or custom of giving a signal of moving locomotives by bell or whistle, and from the fact that the decedent had been in the yard on many occasions during a period of eight months, the jury might properly find that he had knowledge of such custom and practice,

and that he would therefore be justified in relying upon the giving of such signals. This is not a case in which it was demonstrated that the decedent could not have known of the custom. In such circumstances the questions of custom or no custom, and, if custom, then whether it was known by the decedent, were jury questions. *McNally* v. *Pennsylvania Railroad Co.,* 88 *N. J. L.* 277, 279.

This disposes of all of the grounds of appeal residing in the record which were before the Supreme Court and which are argued here. The Supreme Court dealt with certain questions of evidence, which, although raised in the grounds of appeal, were not argued before that tribunal, its opinion stating that only two grounds were assigned and argued there, namely, refusal to nonsuit and to direct a verdict. The questions concerning evidence, therefore, are not before us for decision.

Upon this whole matter we are of opinion that the judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, MINTURN, KATZENBACH, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 13.

*For reversal*—None.