ANNETTE M. CARROLL, PLAINTIFF-APPELLANT, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, A CORPORATION, DEFENDANT-RESPONDENT.

Argued May 27, 1940—Decided October 10, 1940.

For the plaintiff-appellant, *Gilhooly & Yauch*.

For the defendant-respondent, *Lindabury, Depue & Faulks*.

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered in the Essex County Circuit Court, based on the verdict of a jury as directed by the court, in favor of the defendant, The Prudential Insurance Company, and against the plaintiff, Annette M. Carroll.

On July 10th, 1935, the defendant company issued a policy of insurance on the life of one John Thomas Carroll, payable to "Annette M. Carroll, beneficiary, wife of the insured." This policy provided for the payment of $5,000 upon due proof of the death of the insured, and an additional benefit of $5,000 in the event of death by accidental means, subject to the conditions of the policy.

Under the heading "General Provisions" the policy stated: "If within two years from the date hereof the insured, whether sane or insane, shall die by suicide, the liability of the Company shall not exceed the amount of the premiums paid on this policy." Under the heading, "Benefit in Event of Death by Accidental Means," the policy stated: "Said Benefit shall not be payable if such death resulted from suicide, while sane or insane."

In the late afternoon of February 8th, 1937, the insured, John Thomas Carroll, was found dead at his place of business, a service station operated by the Warner Quinlan Company where he had been employed as manager under the name of John Thomas. The cause of death was undisputed and established by competent medical testimony as having resulted from the swallowing of carbolic acid.

In due time following the death the plaintiff, as beneficiary, made claim upon the defendant for payment of both the primary and accidental benefits provided under the policy. The defendant refused to recognize this claim except for an offer to return the amount of premiums paid, contending that death resulted from suicide. As a result, this action was initiated below, the plaintiff alleging in two counts that there was due first, the amount of $5,000 payable because of the death, and second, an additional amount of $5,000 payable because death resulted from accidental means.

At the trial the plaintiff proved the policy, the finding of the body, and the death resulting from carbolic acid poisoning. It was shown on cross-examination that carbolic acid has a strong odor and burns the mucous membrane, but that there were no burns about the lips, chin or front of the month of the insured.

On its part the defendant introduced evidence to show that the insured had been short in his accounts and that his defalcation had been discovered only a short time prior to death. There was also testimony that just prior to his death the insured had said to a fellow employe, "they caught up to me," and "it's a tough life." On cross-examination it was brought out that the insured was normal in appearance and action up until the time his body was found in the basement of the service station.

The defendant also introduced the evidence of the insured's brother, who testified that he had found in the basement of the service station a bottle labeled by a drug company and marked "carbolic acid." The bottle was seven-eighths empty when found. An employe of this drug company testified that on the morning of the date of death he had sold a bottle of carbolic acid to a man answering the general description of the insured and wearing a uniform such as the insured had on when he died.

At the close of the case the defendant moved for a directed verdict on the grounds that death by accidental means had not been proven and that from all of the evidence there could be only one conclusion, namely, that death had resulted from suicide. This motion was granted, and from the judgment entered on the directed verdict this appeal is taken.

The plaintiff relies generally on two grounds of appeal, first—error in the admission or rejection of certain testimony offered, and second, error in directing a verdict for the defendant.

Under the first, three questions are argued on plaintiff's brief. The first concerns the testimony of the defendant's witness, William S. Weber, an auditor of insured's employer, who was called to establish the fact that insured was short in his accounts with respect to stock on hand. This question is raised in plaintiff's fourth ground of appeal, namely, that the trial court erred in admitting "the line of examination and testimony of William S. Weber, a witness for the defendant as follows;" and there is set forth the testimony which appears in the state of the case from page 90, line 35, to page 92, line 12.

The only question contained therein to which an objection was made, an exception taken and set forth as a ground of appeal, to which the answer was not stricken out, had to do with the line of examination conducted by the court, where, the witness, after stating that he had made an audit of insured's records and books, was asked by the court—"what did you find out?" replied—"A shortage of tires, tubes and batteries;" the value of which he said was about $120.

Plaintiff argues that the witness was testifying from his compilation of figures made up from duplicate copies of the

insured's reports, which he says he saw but that they were not put in evidence nor was the failure to produce carbon copies explained, and that therefore the evidence was hearsay and improperly admitted. With this we do not agree.

The witness made an audit of insured's station the day after insured died and testified from his own audit report which he used to refresh his recollection.

Plaintiff admits that the testimony was admissible if the witness was familiar with insured's handwriting and could satisfactorily account for the absence of the reports.

We think that the witness met both these conditions. He testified that some of his report was based upon carbon copies of insured's records, which had been destroyed due to the reorganization of the company. While the court on direct examination refused to permit plaintiff's counsel to ask the witness if he knew the handwriting of insured (which refusal plaintiff's counsel says was error), yet on cross-examination such error, if any, was cured when the witness was asked the same question, to which he replied that he was familiar with insured's handwriting.

Our examination of the record discloses no harmful error by the trial court in respect to the testimony of defendant's witness, William S. Weber.

The second question is as to the rejection of evidence. The plaintiff's counsel asked defendant's witness, George S. Gibson, a fellow employe of the insured—"Did he" (the insured) "ever appear to be downcast?" This question was not allowed and error is urged. However, this witness had already testified on cross-examination, in answer to the question as to how Carroll looked when he came to work that morning, that he looked the same as he always did, namely, "perfect, O.K."

Furthermore, in sustaining the objection to the question court informed plaintiff's counsel that he might have the witness say what Carroll's appearance was to him when he came to work that day. To this question the witness answered "O.K., I told you that before."

We think the question whether the insured *ever* appeared to be downcast was improper because it was too remote to the issue.

As to the third and last point of evidence argued, the plaintiff contends that the trial court erred in refusing to permit the defendant's witness Hicks, who was insured's superior, to answer certain questions propounded to him on cross-examination. The last question is the only one to which exception was taken, and had to do with insured's shortage in accounting for moneys collected by him for his employer from the Great American Tea Company. The question was—"Did he" (the insured) "manifest any expressions that were of an unusual nature when you told him about it?"

The question was objected to as calling for a conclusion and the trial court ruled that it would not be allowed in that form.

We find no harmful error in this ruling. What expression the insured manifested might have been admissible evidence, but, in the absence of any evidence that the witness was acquainted with the insured's usual expression, we agree with the trial court that the question as framed was improper.

The second general ground of appeal relates to the action of the trial court in directing a verdict in favor of the defendant. Plaintiff contends that there is a legal presumption against suicide, and that with the benefit of such presumption the case should have gone to the jury under the rule of law established in this state.

There can be no doubt that there is a legal presumption against suicide which may be invoked to establish a *prima facie* case. *Kresse* v. *Metropolitan Life Insurance Co.,* 111 *N. J. L.* 474; 168 *Atl. Rep.* 634. However, this presumption is rebuttable.

A review of the cases reveals the following state of the law with respect to this question. The presumption against suicide is not evidence, but it does require the opposing party to bring forth evidence to overcome it. *Domanowski* v. *Prudential Insurance Co.,* 116 *N. J. L.* 247; 182 *Atl. Rep.* 906. However, although the burden of going forward with the evidence may change, the burden of proof remains with the plaintiff throughout the case. *Kresse* v. *Metropolitan Life Insurance Co., supra.* A presumption may be destroyed by positive and uncontradicted evidence, so that its proponent may not be able to thereby sustain the burden of proof and a

directed verdict would be warranted. *Hoffman* v. *Lasseff*, 110 *N. J. L.* 122; 164 *Atl. Rep.* 293; *Dunn* v. *Goldman* (*Supreme Court*), 111 *N. J. L.* 249; 168 *Atl. Rep.* 299. Thus, "this presumption against suicide \* \* \* does not prevail where clear and definite evidence of suicide is produced; or where there is no evidence indicating an accident, and the facts point strongly to suicide." *Aydelotte* v. *Metropolitan Life Insurance Co.*, 124 *N. J. L.* 266; 11 *Atl. Rep.* (*2d*) 122.

In the present case the insured died as the result of swallowing carbolic acid. There were no burns about the mouth as might indicate an attempt to expell the liquid after it had been taken by mistake. The odor, taste and burning quality were sufficient to enable decedent to identify the acid and quickly emit it if accidently taken, and yet a considerable quantity of it was found in his stomach.

Carbolic acid was not used in or about the service station, and as stated before, there was evidence to show that the insured had purchased a bottle of this poison just prior to his death. There was also evidence to show that the insured had a motive for self destruction in having been detected of defalcation in his accounts. By contrast, there was no evidence in the case to indicate how or why the insured might have swallowed carbolic acid through accident or mistake.

This is not a case where the presumption against suicide is supported by other facts and circumstances such as in the cases on which the plaintiff relies. We believe that clear and definite evidence of suicide was produced, and that from a consideration of all the testimony a reasonable man could reach only one conclusion, namely, that death came as the result of self-destruction. From such conclusion it follows that the verdict was properly directed by the court below in favor of the defendant.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 12.

*For reversal*—THE CHIEF JUSTICE, PERSKIE, JJ. 2.