15 N.J. Super. 305 (1951)
83 A.2d 355
JOHN RAPP, PLAINTIFF-RESPONDENT,
v.
PUBLIC SERVICE COORDINATED TRANSPORT, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 13, 1951.
Decided September 11, 1951.
*308 Before Judges JACOBS, PROCTOR and WAESCHE.
Mr. Charles A. Rooney, attorney for and of counsel with plaintiff-respondent, argued the cause.
Mr. Edward S. Kirby argued the cause for the defendant-appellant (Mr. Carl T. Freggens, attorney).
The opinion of the court was delivered by PROCTOR, J.S.C.
Defendant appeals from an adverse judgment of the Hudson County Court, entered as the result of a jury verdict.
On September 26, 1947, at about 5:00 P.M., the plaintiff's tractor-trailer was being operated by his employee, Simpson, in a southerly direction along Grove Street, Jersey City. While passing under a trestle of the Pennsylvania Railroad Company, which crosses Grove Street at Railroad Avenue, the top of the trailer came in contact with highly charged electric wires of the defendant as a result of which the vehicle and its cargo were damaged by fire.
The issues framed by the pretrial order were negligence, nuisance, contributory negligence, assumption of risk and damages. During the trial it was stipulated that the placing and maintaining of the wires were by municipal consent under statutory authority. Therefore, we do not consider it necessary to determine whether or not the defendant was guilty of maintaining a nuisance.
*309 The case was tried within the narrow issue of whether or not the defendant under the circumstances gave proper warning of the clearance under the trestle to which its wires were attached.
It appears without dispute that the defendant maintained two electric trolley bus wires passing under the railroad trestle. The wires were attached to hangers, screwed into a plank fastened to the trestle. The electric wires hung approximately 6 inches below the steel girders of the trestle. The outside wire was about 9 feet from the westerly curb. On the right of the northerly side of the trestle as the vehicle approached a sign was stenciled in white paint "Clearance 12 feet 3 inches." This sign was about 5 feet wide and extended "all the way down" the trestle. Plaintiff's tractor and trailer were 12 feet 1 inch in height, within the requirement of R.S. 39:3-84.
It was the contention of the plaintiff that the defendant was negligent in not providing proper warning that the wires were located at a point lower than the height of plaintiff's vehicle. The defendant contended that it had placed an additional sign on a bank board attached to the trestle directly above the wires which read "Clearance 12 feet."
Defendant contends that the trial court erred in denying its motion for judgment and further, that the verdict was against the weight of the evidence. It argues that the testimony offered in behalf of the plaintiff that the trestle was not properly posted as to the clearance under it was negative and hence valueless against positive testimony of defendant's witnesses to the contrary.
On direct examination Simpson, the driver of plaintiff's vehicle, testified in respect to the presence of a warning sign, as follows:
"Q. Will you please tell us just briefly what you did and what took place at that time? A. Well, I was traveling south on Grove Street on my way to Newark and I came to the bridge and I slowed down and I started under. The tractor got pretty well under it and when the trailer got under it touched these wires so I stopped *310 and backed out and unhooked the tractor and by that time the fire company was there.

* * * * * * * *
Q. You stayed there. Now were there any signs on that trestle? A. I seen one sign.
Q. Where was that sign and what did it say? A. It was on the bridge.
Q. By the bridge you mean the trestle itself? A. That is right.
Q. And what did that say? A. Twelve feet three inches.

* * * * * * * *
Q. Were there any other signs there? A. I did not see any.
Q. Were there any signs over these wires? A. I didn't see any.
Q. You did see one sign, however, twelve feet three inches? A. Yes, I did."
On cross-examination he testified as follows:
"Q. Mr. Simpson: you said you approached the trestle there and you looked and you said you saw a sign? A. That is right.

* * * * * * * *
Q. You wouldn't be able to tell us how many feet there was to the curb? A. No, I couldn't.
Q. Well could you tell us where the  withdraw that  you only saw one sign at the time? A. That is right.
Q. Now would you tell us where the sign was that you did see? A. It was on the construction of the underpass.
Q. It was on the trestle, and on which side of the trestle was that on? A. Right.
Q. And do you know what that sign was on? Was it on wood or metal or what type was it? A. I believe it was painted on.
Q. Painted on the metal? A. That is right.

* * * * * * * *
Q. Now as you were going underneath the trestle did you see the wires themselves, prior to the accident that is? A. Yes, I seen the wires.
Q. And did you notice whether or not over or above the direct wires there was a sign there, another sign or a sign said, `Clearance, 12 feet'? A. I didn't see it.
Q. You didn't see it? A. That is right.
Q. Well now, when was it, Mr. Simpson that you noticed that there was a sign there that said 12 feet three inches? A. Well I notice that quite a while before I got to the bridge.
Q. Quite a while  you mean the same day or some other day? A. Well I had been under there before.
Q. And you had been under there with the same truck? A. That is right.

* * * * * * * *
Q. Well do you remember that there was a sign there that said twelve feet three inches at the time of this accident? A. That is right.
*311 Q. Well did you look at the sign after the accident happened or were you too busy to do it? I mean right after the accident? A. You mean the trailer?
Q. Yes. A. Yes, sure I did.
Q. You looked at the sign then and you saw twelve-three? A. That is right."
The plaintiff testified that he had on a number of prior occasions driven the tractor-trailer under the trestle; that he saw the sign reading "Clearance 12 feet 3 inches," but never saw a sign reading "Clearance 12 feet."
Three employees of the defendant testified that there were two signs on the north side of the trestle; that one bearing the words "Clearance 12 feet 3 inches" was stenciled on the trestle a few feet from the right curb line; that 6 feet to the left of this sign was a bank board attached to the trestle directly over the wires on which in six-inch letters were the words "Clearance 12 Feet"; that the letters in the sign "Clearance 12 feet 3 inches" were larger than those in the sign "Clearance 12 Feet."
The general rule is that, ordinarily, affirmative testimony is stronger than negative testimony. Where a witness simply testifies that he did not hear or see a particular object, such testimony standing alone is without value. However, as circumstances are added, tending to increase the probability that the witness would have observed the object had it existed, the testimony approaches a point beyond which it cannot be said that it does not have sufficient weight to carry the case to the jury. Such testimony, while negative in form, is positive in substance. "The only requirement is that the witness should have been so situated that in the ordinary course of events he would have heard or seen the fact had it occurred." 2 Wigmore, Evidence (3d ed. 1940), § 664. See also Note, 140 A.L.R. 530.
Since Simpson, the operator of plaintiff's vehicle, was apparently attentive, on the look-out for warning signs, in a position to have seen the two signs, if both existed, and testified that he saw only one sign, viz., "Clearance 12 feet 3 *312 inches," the fact that the defendant's witnesses testified affirmatively as to the existence of two signs does not, under the well settled rule in this State, remove the question from the domain of the jury. Mellon v. Pennsylvania-Reading Seashore Lines, 7 N.J. 415, 421 (1951); Mazanek v. Pennsylvania-Reading Seashore Lines, 125 N.J.L. 394 (E. & A. 1940).
The cases of Eissing v. Erie R.R. Co., 73 N.J.L. 343 (Sup. Ct. 1906) and Holmes v. Pennsylvania R.R. Co., 74 N.J.L. 469 (E. & A. 1907), cited in the brief for defendant, do not apply where the facts, as in the present case, are not parallel and where one in a position to see, sees nothing. Cowell v. Pennsylvania R.R. Co., 101 N.J.L. 507, 510 (E. & A. 1925). The testimony offered in behalf of the plaintiff cannot be said to be merely negative. Ackerley v. Pennsylvania R.R. Co., 130 N.J.L. 292, 299 (E. & A. 1943).
When permission is given to suspend along a public highway a wire, so charged with electricity as to be dangerous to the public if they come in contact with it, this permission entails a duty to give reasonable warning of such danger. See Opdycke v. Public Service Ry. Co., 78 N.J.L. 576, 584 (E. & A. 1910). It was admitted that on the right side of the trestle, under which side southbound traffic traveled, a sign was stenciled indicating that vehicles under 12 feet 3 inches could proceed with safety. It is also undisputed that the defendant by placing its wires under the trestle lessened that clearance by about six inches. Assuming, as defendant contends, that there was an additional but smaller sign elsewhere on the trestle indicating a lesser clearance, the jury could find that such sign, placed as it was, in its relation to the larger sign indicating a greater clearance, was not a reasonable warning of the danger. McNary, a member of defendant's emergency crew, testified that "quite a number of times" prior to the occurrence he was summoned to the trestle "to pick up wires that had been burned down by trucks." The foregoing placed defendant on notice that the wires attached to the trestle as posted created a hazard to *313 the travelling public, and that defendant could anticipate drivers would conduct themselves as did Simpson. See Alcott v. Public Service Corporation, 78 N.J.L. 482 (E. & A. 1909).
We cannot say as a matter of law that plaintiff's driver, Simpson, was guilty of contributory negligence. In the absence of knowledge or reasonable warning, the presumption is that no obstacle to travel will be encountered. The jury could find that Simpson was not negligent in relying on the 12 feet 3 inch clearance sign in driving the vehicle under the trestle. Where it is reasonably debatable as to whether or not a person exercised a degree of care commensurate with the risk of harm, the issue of contributory negligence is one for the jury. Whether in these circumstances Simpson assumed the risk of the danger was also a jury question. Bacak v. Hogya, 4 N.J. 417, 427 (1950).
Defendant's final point is that the verdict is contrary to the weight of the evidence.
A verdict will not be disturbed unless it clearly evinces that it is the result of mistake, passion, prejudice or partiality. Hager v. Weber, 7 N.J. 201, 210 (1951). We are satisfied that there was competent evidence to warrant the finding of the jury.
Judgment affirmed.
WAESCHE, J.S.C. (dissenting).
In this case, plaintiff charges the defendant with negligence and with maintaining a public nuisance as a result of which plaintiff suffered damages. Defendant denies any negligence, and also denies that it maintained a public nuisance. In separate defenses, the defendant charges plaintiff with contributory negligence and with the assumption of the risk. The jury rendered a verdict in favor of the plaintiff. Defendant appealed.
Plaintiff was the owner of a truck and trailer, which, on September 26, 1947, at approximately 5:00 P.M., by his duly authorized agent or employee, was being driven in a southerly direction on Grove Street, Jersey City, where the tracks of *314 the Pennsylvania Railroad cross Grove Street overhead on a steel trestle. Two electric wires, which were maintained by the defendant, extended beneath the railroad trestle. These wires were attached to hangers that screwed into a board, or wooden trough, that was fastened under and to the steel girders of the railroad trestle. This board, or trough, was about 16 inches wide and two inches thick; the hangers, which fastened into this board, and to which the electric wires were attached, were about four inches thick. Therefore, the electric wires hung approximately six inches below the steel girders of the trestle. Painted on the side of one of the girders over Grove Street was a warning sign which read, "Clearance 12 feet 3 inches." This sign was about six feet to the right of the electric wires. The top of plaintiff's trailer was 12 feet 1 inch high, i.e., above the pavement.
The width of the truck and the width of the trailer were both eight feet. The space between the westerly curb of Grove Street and the nearest wire, at the point where the wire started under the trestle, was nine feet, and, from that point on under the bridge, the space between the curb and the wire widened several feet. There was, therefore, sufficient space, by driving close to the westerly curb, for the truck and trailer to pass under the trestle without passing under the wires. Notwithstanding this situation, the operator of plaintiff's truck and trailer attempted to drive under the railroad trestle at the same place where the defendant's wires passed under the trestle. In so doing, the top of the trailer came into contact with the electric wires and, as a result, the trailer and its contents were burned.
Plaintiff's contention is that the defendant was negligent in failing to warn the traveling public of the height of the electric wires above the street. Defendant, on the other hand. contends that at the time of the accident it maintained a warning sign on a board attached to the trestle directly over the electric wires, which read, "Clearance 12 feet." The plaintiff produced, as a witness in his behalf, one Herbert Turner, a police officer of Jersey City. He was on duty, and about *315 25 feet from the trailer at the time of the accident. Regarding this sign, he testified on direct examination as follows:
"Q. Now were there any signs on the trestle of any kind you could see? A. At that particular time I can't answer that. I don't know.

* * * * * * * *
Q. Well immediately prior to the fire? A. No, not to my knowledge.
Q. Were there any signs at all that you know of on the trestle? A. Only recently it has come to my attention that there is a sign there.
Q. In other words, on the date in question you do not recall whether or not there was? A. I do not.
Q. In other words, you won't say whether there was or was not? A. I can't say."
The plaintiff also produced, as his witness, Irving Simpson, the driver of the truck, who testified on direct examination as follows:
Q. You stayed there. Now were there any signs on that trestle? A. I seen one sign.
Q. Where was that sign and what did it say? A. It was on the bridge.
Q. By the bridge you mean the trestle itself? A. That is right.
Q. And what did that say? A. Twelve feet three inches.

* * * * * * * *
Q. Were there any other signs there? A. I did not see any.
Q. Were there any signs over these wires? A. I didn't see any."
On cross-examination, Mr. Simpson said:
"Q. Well could you tell us where the  withdraw that  you only saw one sign at the time? A. That is right.

* * * * * * * *
Q. And did you notice whether or not over or above the direct wires there was a sign there, another sign or a sign said, `Clearance, 12 feet'? A. I didn't see it.
Q. You didn't see it? A. That is right."
The plaintiff himself also testified on direct examination as follows:
"Q. What you did and what you saw. A. Well I was excited from the commotion up around there and one thing and another and of course I went there to see what the thing was. I had to hire a truck *316 there to get the stuff out of the street and to get it off the street that night and there was a white sign up there said, `12 foot and 3 inches.' Now if there was another sign, I did not see it.

* * * * * * * *
Q. And at any time did you ever see any signs there, `Clearance 12 feet'? A. No I did not."
On cross-examination, he testified as follows:
"Q. Can you tell us whether or not there was another sign there directly over the wires? A. No, I could not."
It is agreed that the defendant erected the electric wires with municipal consent obtained pursuant to the statute, and, therefore, that the electric wires were lawfully over the street. It is also agreed that the wires were used by the defendant to supply the electric current for the operation of defendant's electric buses, which the defendant used to transport passengers for hire as a common carrier. There is no evidence, and the plaintiff does not contend that the electric wires were either improperly erected, or improperly maintained.
In the case of Lorentz v. Public Service Railway Co., 103 N.J.L. 104 (E. & A. 1926) the court held that a structure erected in the street pursuant to statutory and municipal authority was not a nuisance, but a lawful structure of which the public was bound to take notice of its presence and situation. Since, therefore, the wires were erected with legal sanction and were not per se unlawful, the defendant was not liable in damages to the plaintiff for maintaining, in the street, a nuisance.
In his brief, the plaintiff contended that the failure to provide a warning to the traveling public of the height of the wires above the street was a violation of R.S. 39:4-191, from which the jury could find the defendant guilty of negligence for breach of a statutory duty. On the oral argument the plaintiff withdrew this contention and relied upon common law negligence.
The only question of negligence, therefore, is whether the defendant was obligated to warn the traveling public of the *317 height of the wires above the surface of the street; and, if failure to do so was the proximate cause of the plaintiff's damages.
The plaintiff called the three witnesses heretofore mentioned, Turner, Simpson, and the plaintiff himself, to testify concerning the presence of any sign to warn the traveling public of the height of the wires above the street. Two of these witnesses, Turner and the plaintiff himself, said that they did not know whether such a sign was there or not. The other witness, Simpson, merely said, "I did not see any (sign)." He did not say that he looked and no sign was there, nor even, that he looked and saw none. If, in fact, a sign was not there, that fact could have been definitely determined by the witness if he had looked. He could not have been mistaken (had he looked) since such a condition would have been plainly observable, for it was daylight when the accident occurred. Hence, he could have affirmatively testified that the sign was not there, if he had looked and saw none. That the eye is a better witness than the ear is an ancient proverb, and unquestionably true. Simpson's testimony means only what he said, to wit, that he did not see any sign. The only reasonable and logical inference that can be drawn from his testimony is that he does not know whether a sign was there or not. An inference is a reasonable and logical deduction which is drawn from a proven fact, not a mere speculation or conjecture. There must be "some rational connection between the fact proved and the ultimate fact presumed," Mobile, J. & K.C.R. Co. v. Turnipseed, 219 U.S. 35, 55 L.Ed. 78 (1910); Luria v. United States, 231 U.S. 9, 58 L.Ed. 101 (1913). "A presumption upon a matter of fact, when it is not merely a disguise for some other principle, means that common experience shows the fact to be so generally true that courts may notice the truth." Greer v. United States, 245 U.S. 559, 62 L.Ed. 469 (1917).
Even assuming, however, that Simpson's testimony raised the presumption that no sign was there, such an inference was completely overcome by positive and definite evidence *318 that the sign was actually there. The defendant produced three witnesses who affirmatively and definitely testified that attached to the steel girder of the trestle, immediately over the wires in question, was a sign which read "Clearance 12 feet." The credibility of these three defense witnesses was not impeached in any way whatever, and the record does not disclose any reason whatever for rejecting their testimony. There is nothing inconsistent with Simpson's testimony that he did not see the sign, and the testimony of the defendant's three witnesses who said that the sign was there. In the presence of this positive affirmative evidence that such a sign was there, the testimony of the plaintiff's one witness, who merely said that he did not see the sign, is entitled to no weight as evidence that the sign was not there. Hence, there is no conflict of evidence requiring the submission of that fact to the jury. Eissing v. Erie R.R. Co., 73 N.J.L. 343 (Sup. Ct. 1906); Holmes v. Pennsylvania R.R. Co., 74 N.J.L. 469 (E. & A. 1907); Blauvelt v. Erie R.R. Co., 81 N.J.L. 142 (Sup. Ct. 1911) In the case of Cowell v. Pennsylvania R.R. Co., 101 N.J.L. 507 (E. & A. 1925) the court said, "The negative testimony of a witness who simply testified that he did not hear a whistle blown or bell rung is not in conflict with the affirmative testimony of credible witnesses whose testimony that the whistle was blown and the bell rung stands unchallenged." The foregoing quotation was cited in the case of Ackerley v. Pennsylvania R.R. Co., 130 N.J.L. 292 (E. & A. 1943) as a statement of the court itself. In the case of Bower v. Bower, 78 N.J.L. 387 (E. & A. 1909) the court said that a presumption is an inference to which definite legal consequences are attached. See also the case of Ocean County National Bank v. Stillwell, 123 N.J. Eq. 337 (E. & A. 1938). In the case of Gaudreau v. Eclipse Pioneer Division of Bendix Air Corporation, 137 N.J.L. 666 (E. & A. 1948) the court said that a presumption or an inference that requires the production of testimony to overcome it, is not evidence. It is a rule concerning evidence, and it ceases to operate as a factor when it is met by *319 positive and uncontroverted evidence. See also the case of Kirschbaum v. Metropolitan Life Ins. Co., 133 N.J.L. 5 (E. & A. 1945). And in the case of Carroll v. Prudential Ins. Co. of America, 125 N.J.L. 397 (E. & A. 1940) the court said "* * * although the burden of going forward with the evidence may change, the burden of proof remains with the plaintiff throughout the case. * * * A presumption may be destroyed by positive and uncontradicted evidence, so that its proponent may not be able to thereby sustain the burden of proof and a directed verdict would be warranted." Citing Hoffman v. Lasseff, 110 N.J.L. 122 (E. & A. 1933) and Dunn et al. v. Goldman, 111 N.J.L. 249 (Sup. Ct. 1933). In the case of Littlefield v. Lawrence, 83 App. Div. 327, 82 N.Y.S. 25 (Sup. Ct. App. Div. 1903) the court said: "* * * a jury is not at liberty to disregard the testimony of any witness, even though he be a party, who is in no wise impeached, and whose testimony is such that its truth is highly probable." See also Hull v. Littauer, 162 N.Y. 569, 57 N.E. 102 (Ct. of App. of N.Y. 1900); Locicero v. Messina, 267 N.Y.S. 901, 239 App. Div. 635 (Sup. Ct. App. Div. 1933). In the case of Chesapeake and Ohio Railway Co. v. Martin, 283 U.S. 209, 75 L.Ed. 983 (1930) the United States Supreme Court said, "We recognize the general rule, of course, as stated by both courts below, that the question of the credibility of witnesses is one for the jury alone; but this does not mean that the jury is at liberty, under the guise of passing upon the credibility of a witness, to disregard his testimony, when from no reasonable point of view is it open to doubt. * * * The witness was not impeached; and there is nothing in the record which reflects unfavorably upon his credibility. The only possible ground for submitting the question to the jury as one of fact was that the witness was an employee of the petitioner. In the circumstances above detailed, we are of opinion that this was not enough to take the question to the jury, and that the court should have so held." In the case sub judice, the burden is upon the plaintiff to prove the facts constituting negligence and this he has *320 failed to do. Oelschlaeger v. Hahne and Co., 2 N.J. 490 (1949).
The driver of the plaintiff's truck and trailer testified that he knew that the trailer was 12 feet 1 inch high, that he saw the railroad trestle, and that he also saw the sign painted on the steel girder of the trestle, "Clearance 12 feet 3 inches." He also said that he saw the electric wires passing under the trestle. The driver testified that he was fully aware of this situation before he started to drive under the trestle, and that he slowed down as he approached the trestle. Therefore, he also knew, or should have known, since he saw the wires passing under the trestle, that the wires were lower than the trestle itself (i.e., several inches lower than 12 feet 3 inches above the street) and that they were heavily charged with electricity. And he knew, or should have known, for it is common knowledge, what might be expected to happen if the top of his trailer should come into contact with those wires. The law imposes no duty upon anyone to give notice of a dangerous condition, if the condition is obvious; one is obligated to use his senses in order to avoid danger. "No warning need be given of obstructions which should be discovered by a traveler in time to avoid injury therefrom in the exercise of ordinary care." 25 Am. Jur. 706, sec. 411; District of Columbia v. Moulton, 182 U.S. 576, 45 L.Ed. 1237 (1901). The obligation to give warning "disappears entirely where it is shown that the injured person did in fact fully appreciate the peril. So, in respect of such perils as may be said to be obvious to the injured person, there is no obligation to give any sort of warning. He may be guilty of contributory negligence because of his failure to protect himself against obvious perils." 38 Am. Jur. 750, 751, sec. 91. In the case of Sterns v. Highland Hotel Co., 307 Mass. 90, 29 N.E.2d 721 (Sup. Jud. Ct. of Mass. 1940) the court said. "Where a condition is obvious to any ordinarily intelligent person, it is the general rule that there is no duty on the part of the defendant to warn of that condition." And in the case of the Morales v. L.W. Blinn Lumber Company, 9 Cal. App.2d *321 292, 49 Pac.2d 621 (Dist. Ct. of App. Cal. 1935) the court held that notice or warning is not necessary where the danger is obvious or the person has actual notice thereof. In the case of Wiseman v. Northern Pac. Ry. Co., 214 Minn. 101, 7 N.W.2d 672 (Sup. Ct. Minn. 1943) the court said that, "The purpose of a warning is to apprise a party of the existence of danger of which he is not aware to enable him to protect himself against it. Where, as here, the party knows and is aware of the danger, a warning would serve no useful purpose and is unnecessary. There is no duty to warn against risks which are open and obvious."
Hence, there is no evidence, in this case, of negligence by the defendant which was the proximate cause of the plaintiff's damages. In the first place, there is no evidence that a warning sign was not above the electric wires at the time of the accident. The burden is upon the plaintiff to prove the facts constituting negligence. Oelschlaeger v. Hahne & Co., supra. In the second place, the plaintiff's truck driver was fully aware of the dangerous condition. Therefore, the defendant is not liable, even if there were no warning sign, because the absence of such a sign did not contribute to the accident, and was not the proximate cause of the plaintiff's damages.
Moreover, I think the plaintiff is guilty of contributory negligence and of the assumption of the risk as a matter of law. The plaintiff's driver knew and fully appreciated the dangerous situation, but, nevertheless, he deliberately exposed himself to the danger and voluntarily assumed the risk of injury. He could have easily avoided the danger by going through some other street, or by keeping close to the westerly curb in Grove Street while passing under the railroad trestle; and, if he had done so, he would not have passed under the electric wires; hence, he would have avoided the accident. In the case of Cowell v. Pennsylvania R.R. Co., supra, the court said that "The absence of warning does not absolve a person from exercising due care." In the case of Garton v. Public Service Electric & Gas Co., 117 N.J.L. 520 (E. *322 & A. 1937) the court said, "This court has repeatedly held that an individual assumes all the ordinary risks of his voluntary acts or the environment in which he voluntarily places himself on the theory that he has the intelligence of the ordinary prudent individual who is aware of the ordinary risks of his voluntary acts and the risks of the particular environment in which he voluntarily entered."
The judgment in favor of the plaintiff should be reversed, and a judgment entered in favor of the defendant.