24 N.J. Super. 133 (1952)
93 A.2d 600
LAURETTA J. MESSIER, PLAINTIFF-APPELLANT,
v.
CITY OF CLIFTON, COUNTY OF PASSAIC, AND PUBLIC SERVICE ELECTRIC & GAS COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1952.
Decided December 22, 1952.
*136 Before Judges FREUND, STANTON and CONLON.
Mr. Hyman W. Rosenthal argued the cause for the plaintiff-appellant (Messrs. Marcus & Levy, attorneys; Mr. Harry Chashin, of counsel).
Mr. Harvey G. Stevenson argued the cause for the defendant-respondent City of Clifton (Messrs. Stevenson, Willette & McDermitt, attorneys).
Mr. George J. Gockeler argued the cause for the defendant-respondent County of Passaic (Messrs. Lahey & Gockeler, attorneys).
Mr. Richard Fryling argued the cause for the defendant-respondent Public Service Electric & Gas Company (Mr. Luke A. Kiernan, Jr., attorney).
The opinion of the court was delivered by FREUND, J.S.C. (temporarily assigned).
At about 2 A.M. on October 29, 1950, in fog and rain, the plaintiff Lauretta J. Messier was riding in an automobile owned and being operated by her husband, Alexander Messier, in a northerly direction along Randolph Avenue near Hamilton Avenue, in the City of Clifton, County of Passaic. The car was driven onto a parkway or safety isle in the center of the highway and collided with an unlighted electric light pole thereon, causing injuries to the plaintiff. Suit was brought against the city, the county and the Public Service Electric & Gas Company, hereinafter called Public Service. The trial court at the close of the plaintiff's case entered judgment in favor of all three defendants. On this appeal the *137 plaintiff charges that the court erred in the entry of the judgment and in the exclusion from evidence of three letters from the Public Service to her husband.
Randolph Avenue is a public highway which, since 1898, has been under the joint control of the City of Clifton and the County of Passaic. The parkway isle divides traffic into two lanes, northbound and southbound, and begins where the collision occurred. In 1926, by agreement, the cost of repaving the street was shared by the city and the county, and at that time the City of Clifton authorized the erection of four stanchions on and along the parkway isle for the lighting of the highway. Upon completion of the work by the contractor, and approval by the city engineer, the city paid for the installation.
Under a street lighting contract with the City of Clifton, Public Service furnishes electricity for the four light poles. The agreement provides that the lamps shall be lighted continuously from dusk to dawn, that the failure of light be reported by municipal or Public Service inspectors, and that the poles and equipment be maintained by Public Service.
The lights on the parkway were the only lighting facilities in the area. The plaintiff's witnesses testified that the lights were out at 8:30 on the evening of October 28. The proofs disclose that Randolph Avenue south of Hamilton Avenue is about 30 feet wide; that at Hamilton Avenue it widens to about 45 feet, and that approximately 150 feet north of Hamilton Avenue it curves to the left and again widens into the dual-lane highway, each lane of which is over 25 feet in width and the parkway strip about 8 feet wide. Further, there was evidence that there were no signs or warning of the widening of the road, of the beginning of the parkway strip, or of the poles thereon; that the operator of the automobile was unfamiliar with the highway and that, as he approached the parkway, he was proceeding at a moderate rate of speed with his headlights lighted, and because of the poor visibility was driving approximately in the middle of the road, using the lefthand curb line as a guide. He testified *138 that because of the curve and the widening of the roadway he suddenly found himself about to enter the southbound lane; to avoid that happening, he veered to the right, his car mounted the parkway strip and collided with the pole, causing injuries to his wife and damage to the pole.
After the accident Public Service made both temporary and permanent repairs to the pole and the fixtures. The plaintiff offered in evidence three letters written on the letterhead of Public Service and signed by George L. Walsh, its claim agent, addressed to and received by the plaintiff's husband, wherein he was requested to pay to Public Service $197.14 in reimbursement of "the cost of repairing damage to our pole." The purpose of the offer was to show possession and control of the pole by Public Service, which while not denying the authenticity of the signature of the writer of the letters, objected to their admission into evidence without proof of authority to bind the corporation, on the grounds of immateriality and irrelevancy. The court sustained the objection and the plaintiff charges error.
The action against the City of Clifton and the County of Passaic is based on the theory that, being in control of the highway, they had the duty to render it safe for travel from curb to curb; that it was their primary and nondelegable duty to light the highway; that the construction of the parkway isle and the stanchions thereon constituted an obstruction; and the failure to light and warn of their presence created a nuisance, constituting active wrongdoing. The theory of the cause of action against Public Service is that apart from the street lighting contract with the city, Public Service had assumed control of the pole with which the automobile collided, and was negligent and created a nuisance by its failure to light or warn of its presence.
First, we shall deal with the case against the city and the county. It is settled that "the street, and every part of it, by force of the common law, is so far dedicated to the public that any act or obstruction that unnecessarily incommodes or impedes its lawful use by the public is a nuisance." *139 Durant v. Palmer, 29 N.J.L. 544 (E. & A. 1862); Saco v. Hall, 1 N.J. 377, 382 (1949). The essential question is whether the parkway in the center of the highway is an obstruction. If so, then the failure to light might constitute the maintenance of a nuisance and active wrongdoing, or positive misfeasance, for which the municipalities could be held accountable. But, if it is not an obstruction, then the failure to light would amount to mere nonfeasance or neglect, for which a municipality is not liable. Hart v. Union County, 57 N.J.L. 90 (Sup. Ct. 1894); Cochran v. Public Service Elec. Co., 97 N.J.L. 480 (E. & A. 1922); Buffington v. Atlantic County, 11 N.J. Misc. 443 (Sup. Ct. 1933); Allas v. Rumson, 115 N.J.L. 593 (E. & A. 1935); Hammond v. County of Monmouth, 117 N.J.L. 11 (Sup. Ct. 1936); Fisher v. Nutley, 120 N.J.L. 290 (E. & A. 1938); Fay v. Trenton, 126 N.J.L. 52 (E. & A. 1940); Laub v. Camden, 126 N.J.L. 448 (Sup. Ct. 1941); Reardon v. Wanaque, 129 N.J.L. 18 (Sup. Ct. 1942), 132 N.J.L. 536 (Sup. Ct. 1945); Truhlar v. Borough of East Paterson, 4 N.J. 490 (1950); Milstrey v. City of Hackensack, 8 N.J. Super. 221 (App. Div. 1950), affirmed 6 N.J. 400 (1951); Kress v. City of Newark, 8 N.J. 562 (1952); Johnson v. Board of Chosen Freeholders, Monmouth, 21 N.J. Super. 569 (App. Div. 1952).
The plaintiff argues that the parkway is an obstruction, and the failure to light it an act of wrongdoing. The respondents contend that the parkway could not be considered an obstruction and the failure to light it was merely an act of nonfeasance for which they could not be held liable. Assuredly, the construction of a parkway strip in the center of a highway does not per se create a public nuisance, but subsequent conditions reasonably foreseeable when the parkway was constructed might make it so. Dual highways dividing lanes of traffic are now in the interest of the safety of the travelling public, common construction; but the divergence of a single road into dual lanes may well call for adequate warning to one unfamiliar with the locality. *140 Many appropriate devices are in common use, such as mirrored or reflector signs, white traffic lines on the roadway, or signs along the sides of the road. None of these had been provided in the present instance, and the authorities who constructed the parkway should have foreseen that it might well present a menace and hence a public nuisance unless due warning of the danger was given to users of the road. The danger in the instant case arose not from faulty maintenance or construction of the parkway, but from its mere existence when devoid of adequate warning devices. Hence a jury question was presented as to whether or not the municipalities were guilty of active wrongdoing, or misfeasance, as distinguished from passive negligence or nonfeasance.
The resolution of the question of what conduct constitutes actionable misfeasance on the part of a municipality as distinguished from conduct which is non-actionable nonfeasance presents considerable difficulty, but the principles are fully stated in the opinion of Mr. Justice Heher in Milstrey v. Hackensack, supra, at pages 404 and 405:
"The jury could well have found negligence giving rise to a public nuisance in the course taken here. Certainly, that would be so if the condition responsible for the injury had existed from the beginning; it is nonetheless so because the nuisance did not materialize until later, if that was a reasonably foreseeable eventuality. * * *
* * * Where a nuisance as a consequence of the thing done is within the realm of reasonable foresight, the author is liable as the creator of the nuisance when the danger comes into being."
Tested by the foregoing principle, the jury might have found in the instant case that the existence of a parkway strip beginning on a curving, widening road, without any infallible warning, constituted a dangerous condition; that since the only warning device was an electric light which admittedly would burn out at intervals, a potential nuisance was created which became an actionable public nuisance when the light was out. Accordingly, the trial court erred in not submitting to the jury the question of the liability of the municipalities.
*141 Mere failure on the part of the Public Service to light the parkway and street as required by the terms of the contract with the city would not give the plaintiff a cause of action for breach of contract for injuries sustained by reason of the breach, for she was neither a party nor privy to the contract. Cochran v. Public Service Elec. Co., supra; Reimann v. Monmouth Consolidated Water Co., 9 N.J. 134 (1952).
The plaintiff, however, does not rely upon breach of contract. Her cause of action against Public Service is predicated upon another theory. The plaintiff contends that the pole was in the possession or under the control of Public Service; that apart from its contractual obligation to light the pole, it was under a common law duty to light it or warn travelers of its presence; that the failure so to do constituted negligence and the facts presented a jury question which it was error for the court to remove from its consideration. Cochran v. Public Service Elec. Co., supra; Lorentz v. Public Service Ry. Co., 103 N.J.L. 104 (E. & A. 1926); Coan v. Public Service Elec. & Gas Co., 105 N.J.L. 501 (Sup. Ct. 1929), affirmed 105 N.J.L. 487 (E. & A. 1929); Volinsky v. Public Service Coordinated Transport, 5 N.J. Super. 320 (App. Div. 1949); Rapp v. Public Service Coordinated Transport, Inc., 15 N.J. Super. 305 (App. Div. 1951), affirmed 9 N.J. 11 (1952).
As evidence of control by Public Service, the plaintiff established that before the accident the defendant had made repairs or replacements of the pole or equipment whenever necessary. On behalf of Public Service it was admitted that it maintained the poles. After the collision Public Service made both temporary and then permanent repairs to the damaged pole. Under these circumstances repairs made prior and subsequent to the accident were evidential of control. Perry v. Levy, 87 N.J.L. 670 (E. & A. 1915); Dubonowski v. Howard Savings Institution, 124 N.J.L. 368 (E. & A. 1939); Trondle v. Ward, 129 N.J.L. 179 (E. & A. 1942); Vinci v. O'Neill, 103 Conn. 647, 131 A. *142 408 (Sup. Ct. Err. 1925); Kilian v. Logan, 115 Conn. 437, 162 A. 30 (Sup. Ct. Err. 1932).
The plaintiff's proffer of the three letters from Public Service demanding payment for the damage caused to "our pole" was also for the purpose of showing control. They were clearly relevant and material to the issue. The repairs having admittedly been made by Public Service, the request for reimbursement furnished additional evidence from which the triers of the facts could legitimately draw the inference that Public Service had control. The letters having been written on the letterhead of Public Service and signed by its claim agent seeking reimbursement on behalf of his principal for an expenditure incurred, raised the presumption of authority, until rebutted by Public Service. The exclusion of the letters was error.
In contradistinction to the liability of a municipality only for active wrongdoing or positive misfeasance, Public Service would be liable for mere negligence in the performance of or failure to perform a common law duty owing to a member of the traveling public. Even though it did not construct or erect the pole on the parkway isle, from the evidence the jury could draw the inference that it had control of it. The maintenance and control of such an object or structure in a public street would have imposed upon Public Service the duty to exercise reasonable care; and, even without contractual obligation, to maintain a light at night or give some warning of the presence of the pole. Whether Public Service had control of the pole, whether it was negligent in the maintenance of it, whether the negligence was the proximate cause of the plaintiff's injuries  all were questions which should have been submitted to the jury.
The judgment is reversed and a new trial ordered as to all defendants.