## Flatley v. Upper Darby Township (No. 2)

*Ernest Kardas,* for plaintiffs.

*William C. Beatty,* for Upper Darby Township.

*Charles F. Knapp,* for Tony DePaul and Sons.

*James C. Brennan,* for Philadelphia Electric Company.

*Dale A. Betty,* for Charles L. Coffman.

REED, J., March 14, 1972.—Heretofore, in 1970, defendant, Philadelphia Electric Company (PECO) had filed preliminary objections in nature of a demurrer to plaintiffs' original complaint. By opinion and order of July 2, 1970, reported at 50 D. & C. 2d 79, we sustained those objections with leave for plaintiffs to file an amended complaint. Defendant PECO has now filed motion for judgment on the pleadings to plaintiffs' amended complaint. We ruled on plaintiffs' original complaint that no cause of action against this defendant had been alleged, because of failure to allege facts from which it could be legally concluded that defendant was negligent in causing plaintiff John Flatley's death and plaintiff Joseph Flatley's injury.

On September 16, 1967, Marshall Road in the area of Powell Lane in Upper Darby, Pa., was undergoing extensive construction by defendant, DePaul and Sons, under contract with defendant, Upper Darby Town-

ship. No blinkers or signs of warning or speed were erected or in operation.

At about 2 a.m., in the early morning, plaintiffs were walking on the south side of the cartway, about one foot from cars parked on that side, and about 100 yards east of Powell Lane, when a car driven by defendant, Charles L. Coffman, traveling eastwardly, struck plaintiffs, killing one and injuring the other. PECO had *overhead lights in place, but they were not working;* there was no overhead lighting.

Plaintiffs' claim against PECO is set forth as the "Third Cause of Action" in their complaint. Plaintiffs allege defendant to have been negligent in these specific respects: (a) failing to inspect and ascertain the inoperation of its overhead lighting; (b) failing to have the lights in operating order; (c) failing to have them operating when road construction made the road hazardous; (d) failing to ascertain the condition of road construction and take steps to keep its lighting system in operation; (e) failing to install temporary lighting; and, as respects notice, in (f) failing to notify plaintiffs of the inoperation of the lights; and (g) failing to notify vehicular traffic of that inoperation, and of the dangers inherent in the circumstances. As a result of that alleged negligence, plaintiffs "were unable to navigate . . . road with the customary dexterity necessary for self preservation," or to avoid the injuries resulting therefrom, and, therefore, defendant's alleged negligence was the proximate cause of the injuries. This, in substance, represents the basis of plaintiff's claim against PECO.

Motion for judgment on the pleadings is in the nature of a final demurrer before trial. Only the pleadings will be reviewed, and all well-pleaded allegations will be accepted as true and all reasonable inferences drawn therefrom favorable to plaintiff: Paprieves v.

Kelly, 437 Pa. 373, 263 A. 2d 118 (1970); Bata v. Central-Penn National Bank of Phila., 423 Pa. 373, 224 A. 2d 174 (1966); Bogojavlensky v. Logan, 181 Pa. Superior Ct. 312, 125 A. 2d 412 (1956).

Plaintiffs' original complaint alleged only that the overhead lighting system was under control of PECO and that it was inoperative, but nothing more. Plaintiffs now, by their amended complaint, have fleshed out a theory of alleged negligence. Summarizing: Plaintiffs allege that PECO breached its duty to plaintiffs by failing to keep its overhead lights working when it knew, or certainly should have known, of the failure and of the resultant danger created thereby.

Plaintiffs' allegation that defendant failed to give them and other users of the highway notice of the inoperation of its lights falls for lack of meaning or substance. The fact that the roadway was in darkness is itself notice that no overhead lighting is present and is also notice of any dangers and hazards which may be reasonably anticipated under the cloak of darkness. Hence, all users of the roadway, either vehicular or pedestrian, were thereby forewarned to traverse the roadway with commensurate care and caution. Other than the fact itself, no other reasonable notice could have been given. The only answer would be to impose upon PECO the duty to keep the overhead lights working. Plaintiff contends that it is defendant's duty and, having failed, it is liable. We think not.

Negligence is conduct which *falls below the standard* established by law *for the protection of others against unreasonable risk* of harm: Restatement of Torts, 2d, Vol. 2, sec. 282; P.L.Encyc., Vol. 27 (Negligence), sec. 1. Restatement, supra, section 285 teaches that the standard of conduct of a reasonable man is established in one of four ways: (1) by legislative enactment or administrative regulation; (2) by

the court out of such statute or regulation; (3) by judicial decision; or (4) by application of the reasonable man rule to the facts of the case at hand. We find no enactment, regulation or judicial decision determination of defendant's conduct in this case. Therefore, accepting plaintiffs' allegations of facts, we apply the standard of a reasonable man to decide the scope of defendant's duty.

The standard of conduct of the reasonable man may be determined by application of the rule of the Restatement, supra, section 289:

"The actor is required to recognize that his conduct involves a risk of causing invasion of another's interest if a reasonable man would do so while exercising

"(a) such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable man would have; and

"(b) such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has."

P.L.Encyc., supra, section 5, states this proposition in the terminology of foreseeability: Negligence rests upon a reasonable duty to foresee the likelihood of the happening of an injury resulting from one's act. The risk reasonably to be perceived defines the duty to be obeyed: Dahlstrom v. Shrum, 368 Pa. 423, 84 A. 2d 289 (1951). The actor must foresee that his conduct is likely to result in injury to the person to be protected or to a class of persons: Commonwealth of Pennsylvania, Department of Highways v. Eldridge, 408 Pa. 391, 184 A. 2d 488 (1962).

Testing the alleged facts of this case with these rules, defendant may well have known that the absence of overhead lighting would reduce the percep-

tion, clarity and range of a traveler's vision, and thereby put him at some disadvantage.

However, under either test (standard of conduct or foreseeability), defendant, while aware of some possible risk when its lights are not working, nevertheless, could rightfully conclude that a reasonable man confronting darkness would be sufficiently cautious, alert and attentive with the perception of all his senses to avoid an oncoming car; and the lack of lighting would reasonably make him more alert for the lights from vehicular traffic. At the same time, defendant could conclude that vehicular traffic would have lights. Defendant, rightfully, cannot be held to foresee or even imagine that a pedestrian would get himself into a position on a roadway where his protection against being struck by passing vehicular traffic would depend upon artificial overhead lighting.

As respects this defendant, plaintiff's position has no reasonable foundation in everyday life. It represents an attempt to extend defendant's orbit of duty and legal liability far beyond logical and practical limits. Defendant PECO owed these plaintiffs no legal duty to keep its lights working.

Plaintiffs suggest their case is grounded upon the rule of Doyle v. South Pittsburgh Water Company, 414 Pa. 199, 199 A. 2d 875 (1964), which was predicated upon Judge Cardozo's reasoning in the landmark case of MacPherson v. Buick Motor Co., 217 N.Y. 382 (1916), where a recovery was allowed against the manufacturer of a defective part in a car: "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger . . . the presence of a known danger, attendant upon a known use, makes vigilance a duty." Where a thing, if negligently made,

will create a hidden danger, then there is a duty to assure it is made properly.

In Doyle, defendant water company installed and maintained fire hydrants which when needed for a fire could not be operated to bring forth the necessary water. The rule of MacPherson was extended. When a thing is installed as exclusive protection against known danger, then there is a duty of vigilance to inspect and to assure it will operate or work when called upon to alleviate the danger it is there to protect against.

In both MacPherson and Doyle, a clear and unavoidable danger was created by the failure of the mechanism itself and coupled with the *exclusive reliance and dependence* of the user upon its proper functioning, *without any forewarning of the impending failure.* The user depended exclusively upon the care, vigilance and superior knowledge of the maker, or supplier of the service that the thing would work or serve in fulfilling its singular and exclusive function.

The marked difference between those situations and the one at hand lies in the fact that the public does not exclusively rely upon overhead lighting in traveling the public highways. Defendant PECO has not assumed the task of lighting the highways to the exclusion of any and all other means of avoiding the dangers lack of light may create thereon. The lack of lighting is a plain and obvious forewarning that it is not there. Users of the highways are reasonably prepared or alerted to meet that lack.

The fact that overhead lighting is not present, even where much desired, is not a "latent defect" suddenly sprung upon an innocent, uninformed or unwary public. Plaintiffs, therefore, have no cause of action against defendant, Philadelphia Electric Company.

## ORDER

And now, March 14, 1972, defendant Philadelphia Electric Company's motion for judgment on the pleadings is granted; and judgment on plaintiffs John Flatley's and Joseph Flatley's complaint be and the same is hereby entered for defendant, Philadelphia Electric Company.