644 A.2d 593

JOAN H. FEINBERG, PLAINTIFF–APPELLANT, v. STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; DELAWARE AND RARITAN CANAL COMMISSION; AND NEW JERSEY WATER SUPPLY AUTHORITY, DEFENDANTS–RESPONDENTS.

Argued March 28, 1994—Decided August 3, 1994.

128

*Nathan M. Edelstein* for appellant (*Ridolfi, Friedman, Frank & Edelstein,* attorneys).

*Robert M. Anderson* for respondent New Jersey Water Supply Authority (*Henry S. Buchanan,* attorney).

*Robert M. Strang,* Deputy Attorney General, for respondents State of New Jersey, New Jersey Department of Environmental Protection, and Delaware and Raritan Canal Commission (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

POLLOCK, J.

This is an appeal from the Appellate Division's affirmance of the Law Division's dismissal of the complaint of plaintiff, Joan H. Feinberg (plaintiff or Feinberg), against the New Jersey Water Supply Authority (NJWSA or the Authority) for failure to file a timely tort claim notice with the Authority as required by *N.J.S.A.* 59:8–3 of the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to 14–4 (the Act). The issue is whether service of a notice of claim on the Attorney General and the Department of Environmental Protection and Energy (DEPE), formerly known as the Department of Environmental Protection, satisfies the Act's requirement for service on a local public entity. The Appellate Division held that the service did not satisfy that requirement. 265 *N.J.Super.* 218, 626 A.2d 75. We granted Feinberg's petition for certification, 134

*N.J.* 564, 636 *A.*2d 522 (1993), and now reverse and remand to the Law Division.

–I–

The matter arises on the grant of the Authority's motion to dismiss. Therefore, we assume as true all facts alleged by Feinberg and give her the benefit of all inferences that may be drawn from those facts. *Lieberman v. Port Auth. of N.Y. & N.J.*, 132 *N.J.* 76, 79, 622 *A.*2d 1295 (1993). According to Feinberg, on March 29, 1989, while she was building a drug store on her property in Trenton, groundwater overflowed the Delaware and Raritan Canal (the Canal) and caused approximately $100,000 in damages to the property. She alleges that all defendants were "negligent in the operation, maintenance, repair, construction, and/or design of the Delaware and Raritan Canal . . .," and that the Canal "constitutes a continuing private nuisance injurious to the plaintiff."

On June 23, 1989, within the ninety days required by *N.J.S.A.* 59:8–8, plaintiff's counsel served tort-claim notices on the State through the Attorney General's Office, the DEPE, and the Delaware & Raritan Canal Commission (the Commission). Four days later, her counsel served supplemental notices on prescribed forms on these defendants and on the State Treasurer, who processes tort claims for the State.

The State, DEPE, and the Commission share responsibility for the Delaware and Raritan Canal. The State took possession of the Canal from the Pennsylvania Railroad Company in 1934. 1993 NJWSA *Ann. Rep.* 4; *see N.J.S.A.* 13:13A–1 (providing "the state of New Jersey shall forthwith take possession of the Delaware and Raritan canal"). *N.J.S.A.* 13:13–2 empowers and directs the DEPE "to enter upon and take possession of the canal . . . for and on behalf of the state of New Jersey." Additionally, *N.J.S.A.* 13:13A–1 to –15 vests the Commission with the power to "preserve, maintain, [and] improve" the Canal in its capacity as a State park. *N.J.S.A.* 13:13A–2b. Unknown to plaintiff, on June 18,

1986, the DEPE had leased to the Authority the Delaware and Raritan Canal Transmission Complex for use as a water-supply facility.

On July 19, 1989, the Attorney General, through the Treasury Department's Bureau of Risk Management, acknowledged receipt of the notice of claim and responded that "[t]he matter has been assigned for investigation and as soon as we have sufficient information, a representative of this office will contact you." No one told Feinberg of the Authority's involvement.

On March 9, 1990, Feinberg filed her complaint against the State, the DEPE, and the Commission. None of the defendants filed a timely answer. On May 30, 1990, the court entered defaults against each of them. Thereafter, the court vacated the defaults, and on July 31, 1990, the Attorney General filed an answer for all defendants. The answer asserted a separate defense that "[t]he accident was caused by the negligence of persons and entities over whom the defendants had no control." It did not mention the Authority by name.

Feinberg promptly propounded interrogatories, which requested the Attorney General to

identify the entity or person who:

\*   \*   \*

(b) Operates and/or maintains the D & R Canal, and/or has been responsible for the operation and/or maintenance of the D & R Canal, from January 1, 1980 to the present date;

(c) Owns and/or leases, or otherwise has a property interest in, the D & R Canal (from January 1, 1980 to the present date)....

Defendants failed to answer the interrogatories. On February 8, 1991, the Law Division entered an order striking their answers to the complaint. Feinberg then moved under *Rule* 4:23–5 to dismiss the answers with prejudice. Defendants finally submitted the answers to the interrogatories shortly before the return date of the motion in June 1991.

The introduction to defendants' answers stated that:

The State of New Jersey and Department of Environmental Protection has no independent or personal knowledge as to the facts contained in the herein interrogatories especially in light of the fact that the subject action relates solely to the exclusive authority and functions of the NJ Water Supply Authority, which is a separate sue and be sued entity pursuant to *N.J.S.A.* 58:1b–3 *et seq.*

For the first time, Feinberg learned of the unrecorded lease between DEPE and the Authority. The lease was prepared by a deputy attorney general, who approved it "as to form," and was signed by the commissioner of the DEPE and the executive directors of the Commission and the Authority. It provided that the Authority would be responsible for the Canal's "operation and maintenance," payment of all taxes and assessments, keeping the buildings and structures in good repair, and maintenance of adequate liability and property damage insurance.

On June 28, 1991, the Law Division entered a consent order granting Feinberg leave to name the Authority as a defendant. Feinberg amended her complaint on July 10, 1991, more than two years after her cause of action had accrued.

In its answer, filed on August 12, 1991, the Authority raised as a separate defense lack of proper notice under the Tort Claims Act. The Authority relied on *N.J.S.A.* 59:8–3, which provides that an action may not be brought against a public entity "unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in" the Act. In this regard, *N.J.S.A.* 59:8–8 requires that:

A claim relating to a cause of action for death or for injury to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of 6 months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity if:

a. He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8–9; or

b. Two years have elapsed since the accrual of the claim....

Further, *N.J.S.A.* 59:8–9 provides:

A claimant who fails to file notice of his claim within 90 days as provided in section 59:8–8 of this act, may, in the discretion of a judge of the superior court, be permitted to file such notice at any time within 1 year after the accrual of his claim

provided that the public entity has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion based upon affidavits showing sufficient reasons for his failure to file notice of claim within the period of time prescribed by section 59:8–8 of this act; provided that in no event may any suit against a public entity arising under this act be filed later than 2 years from the time of the accrual of the claim.

The Authority contends that plaintiff neither presented it with a notice of claim within ninety days of the accrual of her cause of action nor applied to the Superior Court for leave to file such a claim within one year of accrual.

Feinberg moved to strike the Authority's defense. The Authority filed a cross-motion to dismiss the complaint for failure to file a notice of claim pursuant to *N.J.S.A.* 59:8–3.

The Law Division dismissed the complaint against the Authority for failure to file timely notice under *N.J.S.A.* 59:8–3. In affirming, the Appellate Division determined that the NJWSA is a "local public entity" under *N.J.S.A.* 59:8–2. The court concluded that under *N.J.S.A.* 59:8–7 plaintiff could properly serve the notice of claim only by filing with the Authority.

The Appellate Division referred to *N.J.S.A.* 59:8–10a, which provides:

> A claim shall be presented to the public entity by delivering it to or mailing it certified mail to the office of the Attorney General or the office of the State agency allegedly involved in the action. A claim may be presented to a local public entity by delivering it or mailing it certified mail to the entity.

It also referred to the Act's definitions of "public entity," "State," and "local entity":

> "Public entity" includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State.
>
> "State" shall mean the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily authorized to sue and be sued.

[<em>N.J.S.A.</em> 59:1–3.]

The court interpreted "local public entity" by referring to *N.J.S.A.* 59:8–2, which defined it as "a public entity other than the State." 265 *N.J.Super.* at 222, 626 *A.*2d 75.

Thus, the court perceived a "public entity" as comprised of the "State" and "local public entities." Because the Authority could sue and be sued, the court regarded it as a local public entity.

The court then found that under *N.J.S.A.* 59:8–7, claims against local public entities must be filed with those entities. 265 *N.J.Super.* at 223, 626 *A.*2d 75. In reaching this conclusion, the court relied on *N.J.S.A.* 59:8–7, which provides:

> A claim for damage or injury arising under this act against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission. A claim for injury or damages arising under this act against a local public entity shall be filed with that entity.

The court concluded that plaintiff's claim failed because she had not served the Authority within the time prescribed by the Act.

Both the Law Division and the Appellate Division were troubled by the dismissal of the complaint. The Law Division focused on the "dilatory conduct of the State." Similarly, the Appellate Division recognized that "the harsh result here could have been avoided by the Attorney General promptly advising plaintiff that the Authority was the responsible public entity to be given notice." 265 *N.J.Super.* at 224, 626 *A.*2d 75. It recognized, moreover, "that *N.J.S.A.* 59:8–10a as drafted is a trap for the unwary." *Ibid.*

–II–

–A–

The Tort Claims Act modifies the doctrine of sovereign immunity and creates limited situations in which parties may assert tort claims against public entities. *Reale v. Township of Wayne,* 132 *N.J.Super.* 100, 106, 332 *A.*2d 236 (Law Div.1975). Before the Act, sovereign immunity had been the general rule in New Jersey. *S.E.W. Friel Co. v. New Jersey Turnpike Auth.,* 73 *N.J.* 107, 113 n. 3, 373 *A.*2d 364 (1977). In numerous decisions, however, courts had carved exceptions to avoid harsh results to injured plaintiffs. *Ibid.;* David J. Klinger and Gene Truncellito, Note, *A Review of the New Jersey Tort Claims Act: Notice Provisions, Damages, and Third–Party Claims,* 2 *Seton Hall*

*Legis.J.* 50, 50 (1976). One purpose of the Act was to avoid the "somewhat haphazard and even arbitrary" erosion of sovereign immunity in the judicial decisions. *S.E.W. Friel Co., supra,* 73 *N.J.* at 113, 373 *A.*2d 364.

When adopting the Act, the Legislature recognized "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." *N.J.S.A.* 59:1–2. It also recognized, however, that "the public policy of this State [is] that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." *Ibid.* To balance the conflicting policies, the Legislature directed that parties suing public entities must comply with strict requirements for notifying and suing those entities. Hence, the Legislature developed the detailed scheme for notification contained in *N.J.S.A.* 59:8–1 to –11.

–B–

Generally, we examine "more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, 'to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application.' " *S.E.W. Friel Co., supra,* 73 *N.J.* at 122, 373 *A.*2d 364 (quoting *Viles v. California,* 66 *Cal.*2d 24, 56 *Cal.Rptr.* 666, 423 *P.*2d 818, 821 (1967)). We find that in serving timely notice to the Attorney General and the DEPE, plaintiff properly served the NJWSA under the Tort Claims Act.

A plaintiff's claim must include specific information, including "[t]he name or names of the public entity, employee or employees causing the injury, damage or loss, if known." *N.J.S.A.* 59:8–4. Feinberg's original notice named all parties known to her to be involved in the ownership and operation of the Canal. Through timely discovery, she sought more specific information that would lead to the identification of other defendants. Her problem was not that she failed to make reasonable efforts to ascertain the

identity of such parties, but that the original defendants thwarted those efforts. *See Navarro v. Rodriguez,* 202 *N.J.Super.* 520, 528, 495 *A.*2d 476 (Law Div.1984) ("There is a substantial difference between information not being available and not making an effort to obtain it.").

■ Because the lease between the DEPE and the Authority was unrecorded, plaintiff and her counsel could not have known of the Authority's involvement in the Canal. Her counsel prudently served interrogatories to ascertain the identity of other potential defendants. The original defendants failed to inform her counsel of the Authority's role until well after the expiration of the one-year grace period of *N.J.S.A.* 59:8–9. Worse, through delay in answering the complaint and interrogatories, defendants failed to disclose the identity of the Authority for two years beyond the accrual of the claim. *See N.J.S.A.* 59:8–9 (providing that "in no event may any suit against a public entity arising under this act be filed later than 2 years from the time of the accrual of the claim"). Nothing in the Act evinces the legislative intent that governmental entities, whether intentionally or unintentionally, should be able to impale a diligent claimant on the Act's technical requirements for notification. *Murray v. Brown,* 259 *N.J.Super.* 360, 365, 613 *A.*2d 502 (Law Div.1990) ("A governmental entity should [not] feel free to ignore the claimant in the hope that within a short time it might be able to use a technical cavil to avoid fair litigation.").

In the singular context of this case, notification to the DEPE commissioner was tantamount to notification to the Authority. Although an autonomous entity, the Authority is "in but not of" the DEPE. *N.J.S.A.* 58:1B–4a. Furthermore, the DEPE commissioner serves as the chief executive officer and chairman of the Authority. *N.J.S.A.* 58:1B–4d. When viewed against the background of defendants' dilatory tactics, the unique facts of this case support the conclusion that notification to the commissioner consti-tuted notification to the Authority.

The Authority argues that Feinberg should have known of its role concerning the Canal because *N.J.S.A.* 58:1B–5a, part of the

Authority's enabling act, specifically includes the Delaware Raritan Canal Transmission Complex in the water-supply facilities transferred to the Authority. We disagree. Another section of the enabling act empowers the Authority to "acquire, ... maintain, ... and operate projects ... pursuant to a lease." *N.J.S.A.* 58:1B–6. More persuasive than the reference to the Canal complex in the Authority's enabling act are the facts that the lease between the Authority and the DEPE was unrecorded and that defendants' conduct prevented plaintiff from learning of the role of the Authority concerning the Canal.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment* —Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI, and STEIN—5.

*Opposed* —None.