Robert and Regina **SINCLAIR,**
h/w, **Plaintiffs,**

v.

Guy S. **DUNAGAN, Maple Shade Township, Public Service Electric & Gas Co. et al., Defendants.**

Civ. No. 95–00770(JEI).

United States District Court,
D. New Jersey.

Oct. 25, 1995.

John C. Gillespie, Ferg, Barron & Gillespie, Moorestown, NJ, for defendant, Maple Shade Township.

Suzanne M. Klar, Newark, NJ, for defendant, Public Service Electric & Gas.

George W. Howard, III, Robert J. O'Shea, Jr., Haddonfield, NJ, for plaintiffs, Robert and Regina Sinclair.

James J. Law, Garrigle and Palm, Cherry Hill, NJ, for intervenor, National General Insurance Co.

## OPINION

IRENAS, District Judge:

This diversity jurisdiction case involves injuries to a pedestrian struck by a car while he was crossing an intersection. The victim has sued the driver of the car as well as Maple Shade Township ("Township"), the municipality in which the accident occurred, and Public Service Electric & Gas Co. ("PSE & G"), the owner of a nearby street lamp that was not functioning on the night of the accident. The plaintiff claims that one or both corporate defendants were negligent in failing to maintain the street lamp in proper working order and that their negligence caused his injuries by reducing visibility.

Both defendants move for summary judgment under Fed.R.Civ.P. 56(c), although for different reasons. Defendant Township moves to dismiss the complaint on the grounds that it was not given proper notice of the claim against it in violation of the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 et seq. PSE & G argues for summary judgment on the basis that it had no duty to

maintain lighting for the benefit of the plaintiff.

Because the Township was not properly notified of the claim against it under the New Jersey Tort Claims Act, the plaintiff's claim against it will be dismissed. Defendant PSE & G's motion for summary judgment will also be granted, since PSE & G did not have or breach any duty to pedestrians using the Township's roadways.

## I. BACKGROUND

On the night of March 11, 1993, at about 8:45 p.m., defendant Guy S. Dunagan was driving an automobile which struck plaintiff Robert Sinclair, a pedestrian. The plaintiff was crossing Mill Road, heading south. Dunagan was driving north on Fellowship Road. He was turning left onto westbound Mill Road when he struck and injured Sinclair. PSE & G Brief, Exhibit A.

According to the report of the police officers who arrived on the scene, a street lamp on the southwest corner of Mill and Fellowship was not working on the night of the accident. The police also reported that the victim was "dressed in all dark clothing (dark jacket, dark jeans, etc.)." Township brief, Exhibit A. PSE & G owns the street lights in the municipality and, according to the affidavit of Edward Costello, PSE & G Supervising Engineer, PSE & G changes the bulbs "on a four year basis"[1] and responds to customer requests to repair or replace non-functioning bulbs. Costello Aff. ¶ 2.

According to the affidavit of George D. Haeuber, Township Manager, the Township granted a right-of-way easement to PSE & G to erect street lights roughly twenty years ago. Haeuber Aff. ¶ 10. Haeuber says there is no written service agreement between the Township and PSE & G, but that PSE & G billed the Township each month for service, repairs, and rental fees for the use of the equipment. Haeuber Aff. ¶ 11. Haeuber says that PSE & G had "always" been responsible for maintenance, that the Township did not regularly inspect the street lamps, and that the Township's only role in main-

---

1. The court understands this somewhat ambiguous phrase to mean that the bulbs were replaced every four years.

taining them was to pass along public complaints about broken lights to PSE & G. Haeuber says that the Township had received no such complaints concerning the lamp in question prior to the accident. Haeuber Aff. ¶¶ 12–14.

Prior to filing suit against a government entity such as the Township, the plaintiff is required by the New Jersey Tort Claims Act to provide notice of claim within 90 days of the accident. Plaintiffs Robert and Regina Sinclair did not themselves provide the Township with such notice. However, the Township did receive two letters from third parties which referred to the accident. The first one, dated April 2, 1993, and sent by Prudential Insurance (Dunagan's Automobile Insurer), said that, "I am putting you on notice that you may be involved in this matter and should refer it to your insurance company or your insurance department." Township Exhibit D. The second letter, dated April 7, 1993, and sent by National General Insurance (Sinclair's Underinsured Motorist Insurer), said that, "This letter will serve to place you on notice of this potential liability claim against you." Township Exhibit E.

## II. STANDARD OF REVIEW

■ Under Fed.R.Civ.P. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A non-moving party may not rest upon mere allegations, general denials, or vague statements in opposition to a summary judgment motion. If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Bixler v. Central Penna. Teamsters Health & Welfare Fund,* 12 F.3d 1292 (3d Cir.1993); *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers,* 982 F.2d 884, 890–91 (3d Cir.1992).

■ It is not the role of the judge at the summary judgment stage to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court must draw all inferences in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, the Court must accept the non-movant's version as true. *Pastore v. Bell Tel. Co. of Penna.,* 24 F.3d 508, 512 (3d Cir.1994).

■ The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue of material fact for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring).

## III. DISCUSSION

### A. *The Tort Claims Act Notice*

■ Under the New Jersey Tort Claims Act, a claimant may not pursue an action against a governmental entity without first having afforded it notice and an opportunity to investigate the claim. The filing of the notice is a statutory procedural prerequisite to filing suit. N.J.S.A. 59:8–8. Absent notice, an action may not proceed. *Guzman v. City of Perth Amboy,* 214 N.J.Super. 167, 518 A.2d 758 (App.Div.1986). In the present case, the plaintiff Sinclair did not give notice to the Township, and the notice that the parties' insurance companies sent was not adequate to meet the requirements of the Torts Claim Act.

■ The primary purpose of the claim notification provisions is to "enable the public entity to better protect itself by prompt investigation of a claim, if it desired to do so." *Murray v. Brown,* 259 N.J.Super. 360, 365, 613 A.2d 502 (L.Div.1991). A secondary purpose is to provide time for amicable settle-

ment prior to suit. *Id.* In the case at bar, the Township received notice of a sort in the form of letters sent by two insurance adjusters. *See supra* p. 211; Township Brief, Exhibits D, E. This was the only notice provided.

The notice given to the Township does not comply with the requirements of N.J.S.A. 59:8–4. Several New Jersey courts have noted, however, that strict compliance with the notice requirements of N.J.S.A. 59:8–4 is not always necessary. *Tuckey v. Harleysville Ins. Co.*, 236 N.J.Super. 221, 225, 565 A.2d 419 (App.Div.1989); *Navarro v. Rodriguez*, 202 N.J.Super. 520, 495 A.2d 476, 482 (L.Div. 1984).

Cases which have excused strict statutory compliance generally involve claimants who have been diligent in their efforts at compliance. In *Feinberg v. State, D.E.P.*, 137 N.J. 126, 644 A.2d 593 (1994), for example, a property owner brought an action against the state of New Jersey, the Department of Environmental Protection and Energy ("DEPE"), and the canal commission for damage to property allegedly caused by groundwater overflow at the canal. The property owner served timely notice on the state Attorney General and on DEPE. The plaintiff did not add the New Jersey Water Supply Authority ("Authority") as defendant until two years later, when it learned that the Authority leased the canal complex under an unrecorded lease. Because the lease between DEPE and the Authority was unrecorded, plaintiff and her counsel could not have known of the Authority's involvement in the canal. Her counsel served interrogatories to ascertain the identity of other potential defendants, but the original defendants delayed in answering the complaint and interrogatories until well after the expiration of the filing period. Under these unusual circumstances, the court concluded that governmental entities should not be able to "impale a diligent claimant on the Act's technical requirements for notification." *Id.* 644 A.2d at 597.

In *Dambro v. Union County Park Commission*, 130 N.J.Super. 450, 327 A.2d 466, 471 (L.Div.1974), the court once again was faced with a diligent plaintiff who had acted promptly to give notice. There, following an accident in which the plaintiff broke his neck while diving into a river, plaintiff's counsel sent a letter to the borough of Watchung police department advising of his representation of plaintiff and detailing the accident. Two weeks after the accident, plaintiff's counsel sent to the borough tax assessor a letter containing plaintiff's name and address and information as to where the accident occurred and requesting advisement on the ownership of the premises. The tax assessor returned a letter disclosing that the county park commission was the owner. On the belief that the Park Commission was the sole owner, plaintiff's counsel filed a proper claim against the commission. In deciding that the notice was in substantial compliance, the court held that the borough was estopped from relying on the notice requirements because the borough tax assessor had misled plaintiff's counsel as to the borough's ownership.

■ The case at bar is not analogous to the above cases in which a diligent plaintiff was prevented from filing within the statutory time frame by the error or delay of the municipality. Sinclair was not a "diligent claimant." On the contrary, Sinclair himself never attempted to provide notice to the Township. The only notice that was provided came from two insurance companies, not from the plaintiff or from anyone acting on his behalf. The letters do not even present a fully developed claim, but speak only of eventualities. And the insurance companies do not represent, as N.J.S.A. 59:8–4 requires, the affirmative interests of the plaintiff such that the Township could be expected to acknowledge a claim on the plaintiff's behalf. The interests of the insurers are not even aligned with those of Sinclair. The purpose of the statute is to provide the Township with clear, unambiguous notice of a claim. Township officials cannot be expected to integrate two separate notices from different insurance companies and divine therefrom a claim by the insured.

In addition, the letters provided by the insurers do not meet the technical requirements of N.J.S.A. 59:8–4, even when combined and read together. They do not in-

clude, as the statute requires, the date and circumstances of the accident, a description of the injury, or the amount claimed. Because the notice provided was not presented by the insured or one acting on his behalf and did not conform to the technical requirements of the statute, we hold that it was not in substantial compliance.

Since the Township was never served with notice, the Township's claim form and interrogatories were never sent out, and the Township did not have an opportunity to investigate the accident, evaluate its liability, if any, or assess the claimant's damages. Haeuber Aff. ¶ 5. The plaintiff's failure to provide notice would therefore appear, under these circumstances, to have prejudiced the Township by depriving it of the opportunity to conduct an early investigation, which is the primary purpose of the notice requirement. *Murray*, 259 N.J.Super. at 365, 613 A.2d 502.

It is not necessary to engage in a lengthy inquiry concerning the existence of prejudice. The plaintiff argues that there was no prejudice because the Township police had an opportunity to investigate at the scene of the accident. But the purpose of requiring clear notice prior to suing a sovereign would be undermined if notice were deemed to have taken place every time a police officer, fireman, medical technician, school teacher or other municipal agent appeared at the scene of an accident. A municipality is not required to divine when it may be sued. It must be told so clearly and in detail.

While one purpose of any statutory time limit, including, for instance, statutes of limitation, is to avoid prejudice to a potential defendant from a plaintiff's delay in pursuing a claim, another purpose is to create certainty. Any rule which allowed an independent inquiry into actual prejudice would result in a mini-trial in every case to determine the extent of a defendant's independent knowledge and investigation regarding a claim.

■ The Act states that a plaintiff must provide notice within ninety days of the accrual of a cause of action. N.J.S.A. 59:8–8. If the plaintiff provides notice after ninety days but before one year, under N.J.S.A. 59:8–9 a court may permit the late claim if

the public entity has not been substantially prejudiced thereby. N.J.S.A. 59:8–8(b). The accident occurred on March 11, 1993, but the Township did not receive effective notice until it was served with the present complaint on March 16, 1995. Haeuber Aff. ¶ 8. This places the notice well outside the one-year window in which a court may inquire as to whether the public entity was substantially prejudiced by the delay. After one year passes with no notice of claim, a court is not required, and indeed not permitted, to ask. whether or not the municipality was prejudiced by the delay.

### B. *PSE & G's Responsibility to Maintain the Street Lamp*

PSE & G argues for summary judgment on the grounds that it had no duty to maintain street lighting for the benefit of the plaintiff. Because we find no evidence of a duty arising from any source, nor any evidence of breach if we had found a duty, PSE & G's motion will be granted.

The Township and PSE & G have a longstanding contractual relationship regarding the lighting of the Township's roadways. PSE & G was granted a right-of-way easement by the Township to erect street lights, including the one at issue, in excess of twenty years ago. Haeuber Aff. ¶ 10. There is no written agreement between the parties regarding the maintenance of street lights. Neither the Township nor PSE & G inspect the street lights often. When the Township receives a complaint regarding a broken lamp, it notifies PSE & G, which repairs the lamp. Haeuber Aff., Costello Aff. Otherwise, PSE & G replaces the bulbs in the lamps once every four years. PSE & G sends the Township a monthly bill for service, repairs, and "pole charges," which are the rental fees for the use of the equipment. Haeuber Aff. ¶ 11.

■ To support a claim of negligence, New Jersey law requires first that there be a duty to act. *Anderson v. Sammy Redd & Assoc.*, 278 N.J.Super. 50, 56, 650 A.2d 376 (App.Div.1994). A duty may be imposed by statute, by contract or relationship, or by the common law. There is no statute or regula-

tion which imposes upon PSE & G a duty to provide lighting for the streets of the Township. Nor is there any New Jersey case which imposes a common law duty on electric companies to repair or replace broken light fixtures within any particular time frame. Considering the vast number of street lights and the frequency of motor vehicle accidents, this absence of case law is telling.

The only conceivable source of duty to Sinclair arises from the contractual agreements between the Township and PSE & G. The parties have referred to the Tariff for Electric Service as detailing the understanding between the parties, but in fact the Tariff provides little direct guidance in resolving these questions.[2]

Although PSE & G argues that any duty it may have had ran only to the Township, this court is prepared to accept that the breach of a contractual relationship between a municipality and a public utility might result in the utility's liability to an individual harmed by the breach. The idea that privity is always required in order to establish liability has had little strength since the time of *Henningsen v. Bloomfield Motors*, 32 N.J. 358, 412, 161 A.2d 69 (1960).

In *Ferren v. City of Sea Isle City*, 243 N.J.Super. 522, 580 A.2d 737 (App.Div.1990), the appellate court overturned the trial judge's grant of summary judgment to a public utility on a claim in a personal injury action brought by the parents of a child who was struck by a vehicle while crossing the street. The court found that there was a factual dispute as to whether the power company had a contractual obligation to design the city's street lighting systems. Implicit in the *Ferren* court's decision to deny summary judgment is the holding that a power company could potentially be liable to a pedestrian for injuries proximately caused by a breach of its contract with a municipality. For the purposes of this opinion, we assume without

holding that such liability could be created under New Jersey law.

■ The only issue, then, is whether such a contractual duty existed and was breached in the present case. Even absent a written agreement, there is evidence in the record to support a finding that PSE & G contractually undertook to: (1) replace bulbs upon notification of their failure, and (2) replace them routinely once every four years. This, in any event, was the practice that had developed over the years. Haeuber Aff. ¶ 11, Costello Aff. There is nothing in the record to support a finding that PSE & G contractually obligated itself to repair every broken light fixture in any specific time period without regard to notice of failure.

There is no allegation or evidence that PSE & G failed to meet either of the two obligations it may have contractually assumed. The plaintiff has not alleged that PSE & G failed to replace the bulb on its four-year schedule, nor is there proof offered that it had any notice that the light at the intersection of Mill and Fellowship roads was not working. An affidavit by Mrs. Stephen L. Kakas states that she notified the Township—but not PSE & G—of the broken light about a week before the accident. However, there is no allegation or evidence that this warning was passed along to PSE & G, and, indeed, the Township asserts that it never even received Mrs. Kakas' notice. Haeuber Aff. ¶ 14.

The conclusion that PSE & G has no liability to the plaintiff is further supported by the majority of cases that address the subject. *See, e.g. Cochran v. PSE & G*, 97 N.J.L. 480 (E & A 1922); *Messier v. City of Clifton*, 24 N.J.Super. 133, 93 A.2d 600 (App.Div.1952); *Tollison v. Georgia Power Co.*, 53 Ga.App. 795, 187 S.E. 181 (1936). Although most of the older cases rely on the lack of privity, an approach that is somewhat dated, more modern cases have reached similar conclusions.

---

**2.** PSE & G refers to Paragraph 14.1, "Continuity of Service," which says that PSE & G shall not be liable for any discontinuation of service. This paragraph would appear to be aimed primarily at electric service rather than lighting service but, read broadly, it offers some protection from liability in the present circumstances. In addi-

tion, it would seem odd that PSE & G should be held liable for the discontinuation of lighting arising from broken bulbs and not for a break in electric service, which it is perhaps in a better position to monitor. Nonetheless, we do not rely on this clause in reaching our decision.

In *White v. Southern California Edison,* a California court faced a situation very similar to the one before us now. 25 Cal.App.4th 442, 30 Cal.Rptr.2d 431 (1994). A moped driver was injured one night when a van turned left in front of him. A street light on the corner was inoperative. The moped driver sued the utility company, which had a contractual relationship with the municipality somewhat similar to the one between PSE & G and the Township. The court held that (1) a public utility generally owes no duty to the public for inoperable street lights, and (2) the injured party is not a third party beneficiary of the utility's contract with the municipality. *Id.* 30 Cal.Rptr.2d at 437. In holding that "[t]he burden on the public utility in terms of costs and disruption of the existing rate schedules far exceeds the slight benefit to the motoring public from the imposition of liability," the court further noted that:

> We must take into consideration not only the foreseeability of harm to the plaintiff but also the burdens to be imposed against a defendant. In determining whether a public utility should be liable to motorists for inoperable street lights, we must consider the cost of imposing this liability on public utilities, the current public utility rate structures, the large numbers of street lights, the likelihood that street lights will become periodically inoperable, the fact that motor vehicles operate at night with headlights, the slight chance that a single inoperative streetlight will be the cause of a motor vehicle collision, and the availability of automobile insurance to pay for damages.

*Id.* The New Jersey Appellate Division of the Superior Court has reached a similar conclusion relatively recently, albeit in shorter unpublished opinions that do not set forth the factual underpinnings in great detail. *Ippoliti v. Ely,* (Docket No. A–842–82Ts, 1984); *Marinus v. John Doe, Jersey Central Power & Light Co., et. al.,* (Docket No. 1312–82T3, 1984).

### C. *Federal Expansion of State Causes of Action*

In the case at bar, the plaintiff asks a federal district court to stretch the limits of New Jersey law. With respect to the Township, Sinclair asks this court to ignore the plain language of the Torts Claims Act and to enlarge the limited scope of "substantial compliance" by applying it to a not-particularly-diligent claimant who has hardly complied at all. With respect to PSE & G, Sinclair asks this court to find a duty running from PSE & G to pedestrians and a breach thereof.

The New Jersey legislature has set a firm statutory time frame for the filing of torts claims against sovereign entities, and the courts have, by and large, adhered to the statutory scheme. And almost a century has passed since the advent of street lights (the product of New Jersey's Thomas Edison) and automobiles without a single New Jersey case imposing the duty of repair urged by plaintiff.

■ Regardless of the wisdom of the parties' arguments, it is simply not the place of a federal court to make an expansive reading of state law in a diversity case. As the Third Circuit noted in *City of Philadelphia v. Lead Indus. Ass'n,* 994 F.2d 112 (3d Cir.1993),

> [a] federal court may act as a judicial pioneer when interpreting the United States Constitution and federal law … [i]n a diversity case, however, federal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law.... Our role is to apply the current law of the jurisdiction, and leave it undisturbed.

*Id.* at 123 (citations omitted). *See also, Leo v. Kerr–McGee Chemical Corp.,* 37 F.3d 96 (3d Cir.1994).

### IV. CONCLUSION

The plaintiffs' suit against the Township is dismissed for failure to comply with the notice requirements of the New Jersey Tort Claims Act. Vague letters written by insurance companies which say only that a claim by a third party may potentially develop do not rise to the level of "substantial compliance" with the clear, detailed requirements of the Act. Because we hold that PSE & G neither had nor breached any duty to the

plaintiff, its motion for summary judgment is also granted.