**Wilson v. PECO Energy Co.**

---

C.P. of Montgomery County, no. 07-23044.

*Dale G. Larrimore,* for plaintiff.
*Mark J. Dianno,* for defendant.

HODGSON, *P.J.*, December 22, 2010—Plaintiff/appellant, Delissa Wilson, appeals to the Superior Court from our order dated November 1, 2010 granting appellee, PECO Energy Company's, motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

In November of 2005, appellant, Delissa Wilson, was struck by a car driven by Mark Chiapetta at the intersection of Trooper Road and Betzwood Drive in West Norriton, Montgomery County. The appellant was attempting to cross the road at an unmarked crosswalk in order to reach the SEPTA bus station on the other side of the street. At the time of the accident, the streetlight at the intersection was fully lit. Appellee PECO ("appellee") owned and maintained the streetlight. Plaintiff filed a suit in negligence naming Chiapetta, Pennsylvania Department of Transportation ("PennDOT") and West Norriton Township ("Township") as defendants.

Thereafter, plaintiff filed a second complaint at the above docket number naming appellee and Exelon Corporation as additional defendants. Appellee is an electric and natural gas utility subsidiary of Exelon Corporation. Exelon Corporation has, by stipulation of parties, since been dismissed from the instant matter. At the request of appellee, the actions were consolidated by order of this court dated June 5, 2008. On December 8, 2008, appellee filed a motion for leave to join SEPTA as an additional defendant. Said motion was granted on January 21, 2009. SEPTA filed its answer and new matter to appellee's joinder complaint on March 20, 2009. Appellee filed its reply to

the new matter on April 25, 2009. On March 16, 2010, SEPTA filed a motion to amend its answer and new matter pursuant to Pa.R.C.P. 1033, which this court granted. Appellee filed a motion for summary judgment on June 4, 2010. We heard oral argument on said motion on October 28, 2010. Subsequently, we granted appellee's motion for summary judgment on November 1, 2010. appellant filed a timely notice of appeal that same day. Pursuant to Rule 1925(b), we directed appellant on November 9, 2010 to file a concise statement of matters complained of on appeal. In compliance with Rule 1925(b), appellant filed concise statement on November 16, 2010. Subsequently, all parties to the action stipulated and agreed to the dismissal of Exelon Corporation from the matter.

## DISCUSSION

Appellant raises five issues on appeal: (1) appellant asserts that we erred in finding that appellee did not have a duty to "maintain" the streetlights that it owned at and near the intersection of Trooper Road and Betzwood Drive, in West Norriton Township, Pennsylvania, when both appellee and West Norriton Township admitted in discovery that appellee owned, possessed, and maintained said streetlights; (2) appellant claims we erred in finding that appellee's duty to "maintain" the streetlights that it owned at and near the intersection of Trooper Road and Betzwood Drive, in West Norriton Township, Pennsylvania, did not include the duty to "prevent a decline from existing state or condition...keep in good order; keep in proper condition... and supply with what is needed..." to continue to make the intersection safe for pedestrians as it was at the time the original street lights were installed in about 1970.

Issues three and four reiterate the first two issues and will be addressed generally. Finally, in issue five (5) appellant argues the court erred in not determining there were genuine issues of material fact as to necessary elements of the negligence action that need to be determined by the jury.

When determining if a motion for summary judgment was properly granted, the appellate court's scope of review is plenary. *Miller v. Sacred Heart Hospital*, 753 A.2d 829, 831 (Pa. Super. 2000). Accordingly, an appellate court will apply the same standard used by the trial court; that is, it will review all of the evidence of record to determine whether there exists a genuine issue of material fact. *Id.* at 832. The moving party has the burden of proving the non-existence of any genuine issue of fact. *Accu-Weather, Inc. v. Prospect Communications, Inc.*, 644 A.2d 1251,1254 (Pa. Super. 1994).

In the absence of a factual dispute, the court must discern whether the moving party is entitled to judgment as a matter of law. *Miller*, 753 A.2d at 832. The appellate court may overturn a trial court's entry of summary judgment only if the lower court has committed a clear abuse of discretion. *Id.* A trial court will be found to have abused its discretion if, in resolving the issue for decision it misapplies the law or exercises its discretion in a manner lacking reason. *Id.* Similarly, the trial court abuses its discretion if it does not follow legal procedure. *Id.* Summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Southard v. Temple University*

*Hospital*, 566 Pa. 335, 341, 781 A.2d 101,105 (Pa. 2001).

Pennsylvania Rule of Civil Procedure 1035.3 requires that, when faced with a motion for summary judgment, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must respond identifying:

(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced. Pa.R.C.P. 1035.3.

In the instant matter, appellant has failed to meet the standard articulated above. Accordingly, appellee is entitled to summary judgment as a matter of law.

For purposes of clarity and judicial economy, issues one (1), two (2), three (3), and four (4) will be addressed together as the four issues overlap and the following discussion applies to all four. Appellant argues that the responsibilities of appellee include providing a safe environment for vehicles and pedestrians by both installing and maintaining proper lighting on roadways. According to appellant, proper maintenance includes updating and modernizing streetlights with new technology lights to ensure the safety of pedestrians who cross the roadway. We disagree.

In the first four matters complained of on appeal, the

appellant is attempting to expand the scope of appellee's responsibilities to include street light design, highway design, and traffic engineering. However, appellant offered no evidentiary support to suggest these were common areas of practice for appellee. Appellee PECO is a utility company that provides electricity to customers, both residential and commercial. Appellee, as a utility company, is in the business of producing power upon the request of its customers. Appellant is attributing responsibilities to appellee that cannot be reasonably expected of a utility company.

In *Flatley v. Upper Darby Township*, 56 Pa. D. & C. 2d 179,181 (Pa.Com. Pl. 1972), the court determined that appellee owed no duty to pedestrians to ensure that the streetlights were in working order at all times. In *Flatley*, two pedestrians were walking along the side of a dark roadway at 2 a.m. when a car struck both pedestrians, killing one and injuring the other. *Id.* at 180. At the scene of the accident, appellee had overhead streetlights in place, but they were not operable. *Id.* at 180. The court in *Flatley* reasoned that appellee had not assumed the task of lighting the highways to the exclusion of any and all other means of avoiding the dangers lack of light may create. *Id.* at 184. Given the presence of the lights from vehicular traffic, the appellee could not reasonably foresee that the pedestrians in *Flatley* would get themselves in a position on a roadway where their protection from traffic would depend solely on the presence of overhead street lighting. *Id.* at 183. Thus, the assertion that the appellee had a duty to the pedestrians in *Flatley* to keep the streetlights operable "represents an attempt to extend [appellee's] orbit of duty

and legal liability far beyond logical and practical limits." *Id.* at 183. See also *Darttner v. Lamm*, 5 Pa. D. & C. 2d 552 (Phila. Com. Pl. 1956) (determined that a public utility furnishing electricity for streetlights and operating and maintaining the same under a contract with a municipality did not have a duty to maintain constant and continuous electrical service).

While there has not been an abundance of Pennsylvania case law concerning this issue, the reasoning in *Flatley* has been upheld by appellate courts in other jurisdictions which considered the same or similar issues. For example, in *Sinclair v. Dunagan*, 905 F. Supp. 208 (D.N.J. 1995), a pedestrian, who was struck by a car and injured while crossing an intersection, sued the township and power company, which was the owner of the nearby street lamp that was not functioning on the night of the accident. Applying New Jersey law, the court granted summary judgment in favor of the power company. The court in *Sinclair* determined that the power company neither owed nor breached any duty to the pedestrian. *Id.* Further, the *Sinclair* court reasoned that there was no statute or case law that imposed upon the power company a duty to provide lighting for the streets of the township nor was there any case which imposed a common law duty on electric companies to repair or replace broken light fixtures within any particular time frame. *Id.* Given the large number of street lights and the frequency of motor vehicle accidents, the *Sinclair* court found the absence of case law telling and ruled in favor of the power company. See also *Vaughn v. Eastern Edison Company*, 719 N.E.2d 520 (Mass. App. Ct. 1999) (affirmed a trial court ruling that a utility

company owed no duty to plaintiff, a pedestrian who was struck by an automobile while in a crosswalk, based on the inoperative conditions of the street lights on both sides of the crosswalk).

Here, unlike the streetlights in *Dattner* and *Flatley* that involved inoperable street lights at the time of the accident, the streetlights in the present matter were fully functional on the night of the accident. In both *Dattner* and *Flatley*, the utility companies did not violate any legal duty. Thus, it would be illogical to determine in the instant matter that the appellee violated its legal duty when it provided continuous electrical service to the streetlight. Despite the appellee's continuous electrical service, the appellant aims to extend the appellee's orbit of duty far beyond any logical limit by including lighting and highway design in its list of professional obligations. There is no legally recognized duty to pedestrians or anyone to provide continuous electricity to streetlights let alone a duty to continually update and modernize street lighting with new technology lights. What is more, appellee's corporate designee Marie Hoey stated in her deposition testimony that appellee does not routinely go out and inspect lights in townships but rather relies on the townships, who are the customers, to come to appellee and specify what needed to be done. (N.T., July 16, 2009, at p. 41). West Norriton Township paid for the electrical power to the street light pole at the intersection of Trooper Road and Betzwood Drive. Thus, it would be reasonable for appellee to wait for the Township to request a modification to the streetlight pole or light fixture prior to acting. See *Glenn v. Horan*, 765 A.2d 426,430 (Pa. Comm. 2001) (when a municipality

installs a traffic control device, the municipality may be held liable for negligently maintaining the traffic control). As stated by the Township corporate designee Thomas Cignalia in his deposition testimony, the Township never requested appellee change the light bulb or light fixture at the subject intersection nor did the Township ever ask appellee for advice about the brightness or the wattage of the light bulbs. (N.T., January 20, 2009 at p. 19) Therefore, appellee had no reasonable basis to do anything other than replace the light bulb if necessary and ensure that the wiring and electrical output were properly maintained.

Furthermore, the appellant then attempts to place liability on the appellee by adopting the Black's Law Dictionary definition of "maintain." According to the Black's Law definition, "maintain" means "to prevent a decline form existing state or condition...keep in good order, keep in proper condition...and supply with what is needed...." During discovery appellee and the Township admitted that PECO owned, possessed, and maintained the said street lights. Appellant alleges this "duty to maintain" included the responsibility to update and modernize the street light to ensure that there was proper illumination on the roadways for pedestrians. As stated previously, there is no evidentiary support for such an extensive application of the meaning of "maintain." Appellee, as a utility company, had the obligation to ensure that it provided and maintained a safe source of electricity. Appellee did this through its contract with MJ Electric. This duty was fulfilled as there is no mention of any exposed wires on the street light pole nor was there any electrical short that would have been a fire hazard. In addition, it is an undisputed

fact that the street light at the subject intersection was fully operable on the night of the accident. The appellee provided what was needed and kept the street light pole in proper condition. Thus, appellee as a utility company and provider of electricity fulfilled its "duty to maintain" the streetlights. There was no duty to update and modernize the streetlights or its fixtures on the part of appellee. As such, appellee cannot be in breach of a duty that does not exist. Appellant failed to present evidence of any violation of a legal duty. Consequently, appellant has not established a prima facie claim for negligence against the appellee.

Regarding appellant's fifth issue, subparts (a) and (f) have been addressed in the previous discussion while subparts (b) - (e) address the discovery responses of appellee. Appellant attempts to raise an issue of fact based on the objections raised by the appellee in its discovery responses. As a preliminary matter, it is a party's right to preserve its objections to discovery that is overly broad, cumulative, or burdensome. See *McGovern v. Hospital Services Ass'n of Northeastern Pennsylvania*, 785 A.2d 1012, 1018-19 (Pa. Super. 2001) (discussing the waiver of discovery objections for non-timely assertion). Appellant asserts there is a genuine issue of material fact as to whether: (b) West Norriton Township or appellee determined the type of light, or the particular brightness, or wattage of the lights, or lumen level for the street lights; (c) whether West Norriton Township or appellee made the decision as to the brightness of the bulbs at or near the intersection of Trooper Road and Betzwood Drive when the bulbs were replaced in 2002 and 2006. In answers to the interrogatories, appellee responded

that its investigation of the issue was continuing and not complete. Appellant contends that appellee's response to the interrogatories is enough to establish genuine issue of material fact. However, it was the Township, as the customer, who paid monthly utility bills from appellee. (N.T., January 20, 2009, at p. 21) According to Township Public Works Director Thomas Cignalia, all issues relating to the street lights were referred to appellee. (N.T., January 20, 2009 at p. 21) Prior to the accident, appellee received no notice from its customer that there was any problem or maintenance request concerning the streetlight at the intersection of Trooper Road and Betzwood Drive. (N.T., January 20, 2009 at p. 19) What is more, the streetlight was fully functional both before and on the night of the accident. Appellee cannot reasonably be expected to repair or maintenance an electrical problem where none existed.

The idea that any utility company would make changes to a light fixture or light bulb without any input from the paying customer is untenable. There is case law supporting the position that a utility company does not have a legal duty to provide continuous electrical service to pedestrians. See *Flatley*, 56 Pa. D. & C.2d at 181. However, the appellant asserts without the guidance of any case law or statute that a utility company has the obligation to modify a fully functional streetlight without any complaint from the customer. We find appellant's position unpersuasive. Any disputed issues of fact should be submitted to the jury; however, it is within the discretion of the court to determine the presence or absence of a legal duty and breach thereof in a claim of negligence. The court correctly determined that the appellee did not have a legal duty to appellant

where the appellant failed to present any supporting case law or statute to the contrary.

Also, the appellant maintains the court erred in not determining there were genuine issues of material fact concerning (d) whether West Norriton Township ever asked for advice from appellee concerning what light should be installed on the streetlight pole at the subject intersection in view of the fact that appellee had to object to this interrogatory. However, the Township Director of Public Works and Code Enforcement Thomas Cignalia testified during his deposition that he never requested any guidance from appellee concerning the wattage and brightness of the streetlight bulb. (N.T. January 20, 2009, at p. 16) Given the lack of any request from the Township for a change to the street lighting, there could not be an undertaking by the appellee to redesign the lighting. Thus, there can be no breach of a duty where there was never any undertaking. Based on the testimony of Mr. Cignalia, it is evident that appellant had no duty to update and modernize the street lights at the subject intersection. As such, the court correctly determined appellant had not established a prima facie case for negligence against appellee.

Finally, in subpart (e) of appellant's fifth issue, appellant claims the court erred in not determining there were genuine issues of fact concerning whether the appellee ever provided any guidance or advice to West Norriton Township about what lumen light should be installed on the street light pole at the intersection of the accident. This argument fails for reasons similar to those mentioned in the former discussion of subpart (d). The appellee never provided any guidance or advice to the Township

because the Township never requested any guidance nor did it file any complaints with appellee. The appellant is in the business of providing electricity to customers. The appellee has not held itself out as providing any other services, and the appellant has provided no evidence to indicate the appellee had such a responsibility.

## CONCLUSION

Based on the foregoing, the undersigned respectively requests that the decision to grant plaintiff's motion for summary judgment be affirmed.